THE SOUTHERN KANSAS RAILWAY COMPANY V. WILLIAM M. DUNCAN.

FINDING, *Not Supported by Evidence—New Trial.* When a case is tried on a certain theory, and the jury return answers to special questions of fact submitted to them by the court, and there is no evidence in the record to support or authorize a finding that is essential to a recovery, it is error to overrule a motion for a new trial.

*Error from Harper District Court.*

REPLEVIN, by *Duncan* against *The Railway Company.* Judgment for plaintiff, at the January term, 1887. The defendant company brings the case here. The opinion states the facts.

*Geo. R. Peck, A. A. Hurd,* and *Robert Dunlap,* for plaintiff in error.

*Geo. E. McMahon,* for defendant in error.

Opinion by SIMPSON, C.: This was an action of replevin, originally commenced before a justice of the peace in Harper county, to recover the possession of an office desk shipped by one William M. Duncan from Pittsburg, Penn., to Anthony, Harper county, by the way of the St. Louis, Fort Scott & Wichita Railroad. It was shipped from Pittsburg on the 20th day of May, 1885, over the Pittsburg, Cincinnati & St. Louis Railroad to St. Louis, delivered there to the St. Louis & San Francisco Railroad Company, transported by that company to Cherryvale, Kansas, and then delivered by it to the Southern Kansas Railroad Company, which transported it to the city of Harper, that being the nearest point on the line of their road to the city of Anthony, in Harper county. The agent of the Southern Kansas Railroad Company promptly notified Duncan, at Anthony, that the office desk had been received at Harper, and was awaiting his order and the payment of charges. Duncan demanded that the desk should be delivered at Anthony, the place to which it was consigned. This

not having been complied with, he demanded the possession of, or the delivery of the desk to himself at Harper, and then brought his action in replevin for possession. He did not tender or offer to tender the charges for transportation, amounting to $7.35. He had judgment before the justice, and a verdict and judgment in the district court on an appeal by the railroad company.

There was some evidence offered at the trial in the district court, that the St. Louis, Fort Scott & Wichita Railroad was completed to Anthony, and had been delivering freight there before the 28th day of May. The bill of lading made at Pittsburg at the time of the shipment was indorsed *via* that road, and on the desk were several tags marked " *Via* St. L., Ft. S. & Wichita Road." Until the completion of that road to Anthony, the usual place to receive freight for Anthony was at the city of Harper, on the line of the Southern Kansas Railroad. There is nothing in the evidence tending to show the connections of the St. Louis, Fort Scott & Wichita Railroad with the lines of other railway companies; nor does the record show that the officers of the St. Louis, Fort Scott & Wichita company had given notice that their line was completed and freight would be received to Anthony, as is usual in such cases. In the court below the case was tried on the theory that the liability of the Southern Kansas Railroad Company depended on the fact as to whether or not it had received the desk at its station at Cherryvale in the ordinary course of business. To maintain that theory on the part of the railroad company, the deposition of its station agent at Cherryvale was read, that it had been so received. There was a special finding of the jury, that the defendant railroad did not come into possession of the desk at Cherryvale in the ordinary course of business. We do not know upon what evidence this finding is based, but it must have been produced by the fact that the bill of lading read " *Via* The St. L., Ft. S. & Wichita Road," as this is the only circumstance in the record from which such an inference can be drawn. It was the duty of the railroad company that received the freight at Pittsburg to either transport it to Anthony over its own line,

or if its line did not extend beyond St. Louis, to deliver it at this point to some connecting line that ran to Anthony, or to some line that would deliver it to a company that had a line of road to Anthony. At St. Louis the Pittsburg company delivered it to the St. Louis & San Francisco Railroad Company; this company carried it to Cherryvale, where it connects with the Southern Kansas Railroad Company. It was delivered to the Southern Kansas Railroad Company by a connecting line, and we think that under the circumstances the Southern Kansas Railroad Company was bound to receive it, and having received it, the disposition of it was to be governed by the same rules that applied to the Pittsburg company, that first received it.

It was the duty of the Southern Kansas road to deliver it at Anthony, if that was a station on its line; if not, then it was its duty to deliver the desk to the first connecting line that ran to Anthony, and if there were no such connecting lines, then it was its duty to deliver the office desk at that point on its own line that was most easy of access to the consignee at Anthony. We suppose that there was a connection at some point between the Southern Kansas railroad and the St. Louis, Fort Scott & Wichita road, and that the Southern Kansas could have delivered this desk to the St. L., Ft. S. & W. R. at the connecting point. We can probably take judicial notice of the location of those lines of railroad that have been operated for years in this state; but we do not take judicial notice at what time a line of railroad is completed to a given point, and that it is receiving freight at and carrying freight to that point. If there was such a connecting point, it was the duty of the Southern Kansas Railroad Company to deliver this freight to the St. L., Ft. S. & Wichita, so that it could reach Anthony by that line, in accordance with the direction in the way-bill. "The reception of freight consigned by marks on the bill of lading to a point beyond its own terminus does not import an agreement to carry it to the destination named." (*Ortt v. M. & St. L. Rld. Co.*, 31 N. W. Rep. 519, and authorities cited.) From this it would appear that if there was no connecting line to which the Southern Kansas Railroad Company could

have delivered the desk to be transported to Anthony, it was proper under the circumstances to unload it at the Harper City station and notify Duncan of its reception there. It is very clear from all this that the case was tried by both sides on the wrong theory, and that the controlling questions are, whether the desk could be delivered by rail, and in accordance with the direction in the way-bill, at Anthony; and if so, whether the failure of the Southern Kansas Railroad Company to deliver it to the St. Louis, Fort Scott & Wichita Railroad Company, or to some line connecting therewith, forfeits the usual lien for freight. The solution of these questions probably involves the determination of the exact time at which the St. Louis, Fort Scott & Wichita road was finished to Anthony and was receiving freight for shipment at that point, also some proof as to the connections of these two roads. It seems not to aid in the settlement of these disputed questions to say that it may be the law that when the St. Louis & San Francisco road received this desk from the Pittsburg & St. Louis Railway, it became the agent of the shipper, because if this is so, when the St. L. & S. F. road delivered it to the Southern Kansas Railroad Company, it became the agent of the shipper probably to the same extent as the road from which it received the freight; but the sole duty of each or both under the agency, was to see that the freight reached its destination over the road directed in the bill of lading; or if such road had not been open for business to that point, then that it should be delivered at the most accessible and usual point for freight to be received for consignees residing at Anthony.

The special finding of the jury that the goods were not received by the Southern Kansas Railroad Company in the usual course of business, has no evidence to support it, and because of this, and of the trial on the wrong theory, it is recommended that the judgment be reversed, and the cause remanded to the district court with instructions to grant a new trial.

*Finding, not supported by evidence—new trial.*

By the Court: It is so ordered.

All the Justices concurring.