## W. M. PATTERSON V. THE MISSOURI PACIFIC RAILWAY COMPANY.

No. 15,173.   (94 Pac. 138.)

### SYLLABUS BY THE COURT.

1. EVIDENCE—*Judicial Notice—Location of a Railroad.* The courts will take judicial notice of the route of a railroad which has been built and operated for a number of years from one station to another within the state of Kansas, and that, for a great portion of the distance between such stations, such route is beyond the boundaries of this state and within another state.

2. RAILROADS—*Interstate Commerce.* A railroad company in conveying freight over such route between such stations is engaged in interstate commerce.

3. CONSTITUTIONAL LAW—*Police Regulations—Interstate Commerce.* While the state has the power to make reasonable police regulations affecting the operation of railroads operating within the state and also engaged in interstate commerce, the regulations should be such only as tend to the efficient and orderly discharge of the duties of the railroads to their patrons within the state, and to the safe-guarding of persons and property therein, and impose no considerable burden upon the interstate commerce.

4. RAILROADS—*Penalty for Failure to Furnish Freight-cars—Valid Statute.* The provision of chapter 345 of the Laws of 1905 which imposes a penalty of one dollar per day upon each car for delay in furnishing freight-cars ordered, and permits no excuse therefor except "strikes, unavoidable accidents, or other public calamity," is not invalid, but is a reasonable police regulation and imposes no considerable burden upon interstate commerce.

Error from Woodson district court; OSCAR FOUST, judge.   Opinion filed February 8, 1908.   Reversed.

*J. C. Culver,* and *Carr W. Taylor,* for plaintiff in error.

*J. H. Richards,* and *C. E. Benton,* for defendant in error; *Lamb & Hogueland,* of counsel.

The opinion of the court was delivered by

SMITH, J.: W. M. Patterson filed his petition in the district court of Woodson county, claiming damages against the defendant railway company in the sum of $6336 for failure to deliver freight-cars as ordered by him, under the provisions of chapter 345 of the Laws of 1905. The defendant filed a general demurrer to the petition and to each of the eleven counts thereof, which demurrer was by the court sustained. The plaintiff elected to stand upon his petition, and the action was dismissed at his cost. The case is brought here for a review of this order and judgment.

The demurrer was sustained to an amended petition, which had been filed in compliance with an order of court requiring the original petition to be made more definite and certain, and we are asked to review this order. The legality of making it has become only a moot question, which will not be considered here.

Each of the eleven counts of the petition is based upon an order for cars, differing only in date. The following is a copy of the first order:

"ROSE, KAN., November 3, 1905.
"*Mr. V. G. Madison, Rose, Kan.:*
DEAR SIR—Please set on your side-track at once at Rose, Kan., nine (9) cars suitable for loading with hay to be shipped to Kansas City, Kan.

"I herewith hand you $90 to apply on freight for above cars.    Yours truly,    W. M. PATTERSON."

The portions of chapter 345 of the Laws of 1905 which pertain to the questions here involved read:

"SEC. 2. When the owner, manager or shipper of any freight of any kind shall make application in writing to any superintendent, agent or other person in charge of transportation of any railroad company, receiver or trustee operating a line of railway, at any point that cars are desired upon which to ship any freight, it shall be the duty of such railroad company, trustee or other person in charge thereof to supply the number of cars so required at the point indicated in the application

within a reasonable time thereafter, not to exceed six days from the receipt of such application, and shall supply such cars to the person or persons so applying therefor in the order in which such applications are made, without giving preference to any person; provided, if the application be for ten cars or less, the same shall be furnished in three days; and provided further, that if the application be for thirty cars or more, the railway company may have ten full days in which to supply the cars.

"SEC. 3. Said application for cars shall state the number of cars desired, the place at which they are desired, and the time they are desired; provided, that the place designated shall be at some station or public switch on the line of its road.

SEC. 4. When the cars are applied for under the provisions of this chapter, if they are not furnished, the railway company so failing to furnish them shall forfeit to the party or parties so applying for them the sum of one dollar per day for each car failed to be furnished, to be recovered in any court of competent jurisdiction, and all actual damages that such applicant may sustain.

"SEC. 5. Such applicant shall at the time of applying for such car or cars deposit with the agent of the company one-fourth of the freight charge for use of such car or cars,· unless the said railroad company shall agree to deliver said car or cars without such deposit."

Section 10 provides that "the provisions of this law shall not apply in cases of strikes, unavoidable accidents, or other public calamity."

The first contention of the defendant—that the orders were not addressed to any superintendent, agent or any other person in charge of transportation of the defendant company—is untenable on demurrer. The petition alleges that the applications were made to the company and the company's agent,· and the copies of the applications, made a part of the petition, show that they were addressed to Mr. V. G. Madison, Rose, Kan. This is a sufficient allegation, as against a demurrer, that V. G. Madison was the agent of the company.

We also consider that the application for the cars "at once" was sufficient to locate the time they were de-

sired. The statute prescribes the number of days which the lawmakers regarded as a reasonable time for compliance after the time set by the shipper. Hence the term "at once" may be regarded as equivalent to "immediately," or "to-day," which, the order being for nine cars, the statute extends to three days before any penalty may be imposed.

It is next contended that the line of the defendant's railroad over which the shipments were to be made from Rose, Kan., to Kansas City, Kan., extends easterly from Rose to the eastern line of the state, and thence for a long distance through the state of Missouri, and returns into this state at Kansas City, Kan.; also, that the courts of this state take judicial notice of these facts. So far, at least, this contention is correct. (17 A. & E. Encycl. of L. 944; 16 Cyc. 861; *S. K. Rly. Co. v. Duncan,* 40 Kan. 503, 505, 20 Pac. 195; *Peddicord v. Berk,* 74 Kan. 236, 86 Pac. 465; *Worden v. Cole,* 74 Kan. 226, 86 Pac. 464.)

In view of these facts it is said that the carrying of the freight contemplated is interstate commerce, and that the statute in question, which imposes heavy penalties and allows no excuse for its infraction except "in cases of strikes, unavoidable accidents, or other public calamity" (Laws 1905, ch. 345, § 10), is a burden upon such commerce, and invalid; that it is in derogation of the powers conferred upon congress by section 8 of article 1 of the constitution of the United States. On the other hand, it is claimed that the statute in question is within the police power of the state, and that the provisions thereof cast no unreasonable burden upon interstate commerce; that in fact no interstate commerce question is involved; that if such question is involved the provisions of the statute are in aid of such commerce, instead of being a burden thereon.

The supreme court of the United States being the final arbiter of what constitutes interstate commerce, and having the province of determining the bounds at which police regulation by the states must stop to avoid

impinging upon the exclusive power to regulate such commerce which is delegated to congress, we turn to its decisions.

In *Hanley v. Kansas City Southern Ry. Co.*, 187 U. S. 617, 23 Sup. Ct. 214, 47 L. Ed. 333, it was held that the state of Arkansas cannot legally prescribe a rate for a shipment between two stations in that state over a line of railroad the longer portion of which is in the Indian Territory. Such shipment is held to be interstate commerce and under the regulation of congress.

Following this decision, we are constrained to hold that the traffic in question is interstate commerce. It then remains to be decided whether the statute involved is invalid as an attempt by the state to regulate interstate commerce, or whether it is valid as a proper exercise of the police power of the state.

The case of *Houston & Tex. Cent. Railroad v. Mayes,* 201 U. S. 321, 26 Sup. Ct. 491, 50 L. Ed. 772, is analogous to the case at bar. The statute of Texas, the invalidity of which was determined in that case, is substantially like our own, with two important exceptions. By that statute a penalty of $25 a day for each car not delivered within the time limited was imposed (Rev. Stat. Tex. 1895, art. 4499) ; in our statute the penalty is one dollar for each car per day. Under the Texas statute the excuses for delay were "that the provisions of this law shall not apply in cases of strikes or other public calamity" (Rev. Stat. Tex. 1895, art. 4502) ; in our statute they are "that the provisions of this law shall not apply in cases of strikes, unavoidable accidents, or other public calamity." (Laws 1905, ch. 345, § 10.) Mr. Justice Brown, in the opinion in the Mayes case, said:

"While there is much to be said in favor of laws compelling railroads to furnish adequate facilities for the transportation of both freight and passengers, and to regulate the general subject of speed, length and frequency of stops, for the heating, lighting and ventilation of passenger-cars, the furnishing of food and water to cattle and other live stock, we think an absolute re-

quirement that a railroad shall furnish a certain number of cars at a specified day, regardless of every other consideration except strikes and other public calamities, transcends the police power of the state and amounts to a burden upon interstate commerce. It makes no exception in cases of a sudden congestion of traffic, an actual inability to furnish cars by reason of their temporary and unavoidable detention in other states, or in other places within the same state. It makes no allowance for interference of traffic occasioned by wrecks or other accidents upon the same or other roads, involving a detention of traffic, the breaking of bridges, accidental fires, washouts or other unavoidable consequences of heavy weather. The duty of the railroad company to furnish the cars within the time limited is peremptory and admits of no excuses, except such as arise from strikes and other public calamities. If, for instance, the owner of a large quantity of cotton should make a requisition under the act for a number of cars, the railway company would be bound to furnish them upon the day named, or incur a penalty of $25 for each car, though the detention of the cotton involved no expense to the owner, or may even have resulted in a benefit to him through a rise in the market.

"While railroad companies may be bound to furnish sufficient cars for their usual and ordinary traffic, cases will inevitably arise where by reason of an unexpected turn in the market, a great public gathering, or an unforeseen rush of travel, a pressure upon the road for transportation facilities may arise which good management and a desire to fulfil all its legal requirements cannot provide for, and against which the statute in question makes no allowance.

"Although it may be admitted that the statute is not far from the line of proper police regulation, we think that sufficient allowance is not made for the practical difficulties in the administration of the law, and that, as applied to interstate commerce, it transcends the legitimate powers of the legislature." (Pages 329, 330.)

The right of the state to impose reasonable police regulations for the safety and protection of citizens of the state and of their business and property upon railroads operating within and receiving protection and

16—77 KAN.

other benefits from the state, even though such railroads may at the time be engaged in interstate commerce, is unquestioned, even though the regulations may impose some slight burdens upon interstate commerce. As before said, the supreme court of the United States is the final arbiter as to whether such regulations are reasonable and whether they impose an unreasonable burden upon interstate commerce. Each case being considered, in a generous spirit, upon its own merits, there is and can be no general rule.

One important objection to the validity of the Texas act, urged in the Mayes case, *supra,* was the great penalty imposed thereby upon a railroad, the penalty going to the shipper, who possibly had suffered no damage, but, it may be, had been benefited by the delay. The penalty provided by the Kansas act, on the other hand, is merely nominal, and is not sufficient, it would seem, to furnish any inducement to order cars not actually needed. It is the same amount per day on each car that is allowed as demurrage to the railroad companies for the failure of shippers promptly to unload their cars after arrival at destination.

The only remaining ground for holding the Texas act to be an infringement upon the power of congress to regulate interstate commerce and not a proper police regulation to be exercised by the state was the paucity of excuses for delay in furnishing cars ordered which would exempt the railroad companies from penalty. The excuses under the Texas act were "strikes or other public calamity." Under the Kansas act they are "strikes, unavoidable accidents, or other public calamity." The addition of "unavoidable accidents" is also a wide departure from the Texas law. In *The State v. Hansford,* 76 Kan. 678, 92 Pac. 551, Mr. Chief Justice Johnston, speaking for the court, defined the word "accident" as "an undesigned contingency; a happening without intentional causation; that which exists or occurs abnormally; something unusual or phenomenal;

an uncommon occurrence." (Page 685.) It will thus be seen that the various incidents which it was said in substance in the Mayes case should not result in penalizing a railroad company for its failure to furnish freight-cars are excused under the Kansas act, provided they were unavoidable on the part of the company sought to be penalized.

If, therefore, as said in the opinion in the Mayes case, the Texas statute "is not far from the line of proper police regulation" (p. 331), we are justified in concluding that the car-service act of 1905 in question is well within that line.

The order of the district court sustaining the demurrer is reversed and the case is remanded.