Grain and Lumber Co. v. Railway Co.

THE STAR GRAIN AND LUMBER COMPANY, *Appellee*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant.*

No. 16,925.

SYLLABUS BY THE COURT.

1. "MUTUAL DEMURRAGE LAW"—*In What County Actions May be Brought.* Under the provisions of section 50 of the old code (Gen. Stat. 1901, § 4480, Code 1909, § 52), as amended by section 1 of chapter 379 of the Laws of 1903, an action may be brought against a railroad company, to enforce a liability under the mutual demurrage act (Laws 1905, ch. 345), in any county of the state in which is located the principal office or place of business of such railroad company.

2. ——— *Claims United in One Action.* In such an action it is proper to unite all claims for damages directly flowing from the one transaction, the effort of the shipper to procure and the failure of the railroad company to supply cars for the transportation of freight, whether the damages be such as are determined in amount by the statute and are generally designated as penalties or forfeitures or are such as are not so determined or designated.

3. ——— *Law is Constitutional.* Chapter 345 of the Laws of 1905 is not void for the reason that the title thereof does not conform to the requirements of section 16 of article 2 of the constitution of Kansas, but such title is sufficient to embrace the provisions of the act. If chapter 286 of the Laws of 1901 is deficient in this respect, such deficiency does not invalidate the act of 1905 which is amendatory thereto.

Appeal from Shawnee district court. Opinion filed July 7, 1911. Affirmed.

*William R. Smith, O. J. Wood, William Osmond,* and *Alfred A. Scott,* for the appellant.

*Carr W. Taylor,* and *Edwin D. McKeever,* for the appellee.

The opinion of the court was delivered by

SMITH, J.: This action was brought in the district court of Shawnee county to recover a number of forfeitures or penalties under the provisions of chapter

345 of the Laws of 1905 (Gen. Stat. 1909, § 7201), known as the mutual demurrage law. The case was tried to the court without a jury, findings of fact and conclusions of law were made, and judgment was rendered for plaintiff as to a portion of the items claimed and was refused as to the remainder. The railroad company appeals. The company first moved to strike out the counts of the petition seeking to recover a penalty, on the ground that the court had no jurisdiction. Upon the overruling of the motion, it filed a demurrer to the petition, which was based on the same ground and was also overruled.

It is urged that both these rulings are erroneous and they are argued together. The appellant cites sections 48, 49 and 50 of the old code as amended (Gen. Stat. 1901, §§ 4478-4480; Code 1909, §§ 50-52), and contends that section 48 is applicable to this action; that it must be brought in the county where the cause of action or some part thereof arose. Sections 48 and 49 remain as enacted in 1868, and the latter section excepts from its provisions the three causes of action mentioned in the former. Section 50, as cited, was amended by section 1 of chapter 379 of the Laws of 1903, and does not contain the exception. It is the last expression of the will of the legislature on the subject and is expressly applicable to this and like actions. It reads:

"Section 50 of chapter 80, Laws of 1868, being an act entitled 'An act to establish a code of civil procedure,' is hereby amended so as to read as follows: Sec. 50. An action against a railroad company, or an owner of a line of mail stages or other coaches, for any injury to persons or property upon the road or line, or upon a liability as a carrier, may be brought in any county through or into which said road or line passes and in which the plaintiff shall have been a *bona fide* resident prior to and at the time of bringing such action; or such an action may be brought in the county in which is located the principal office or place of business

Grain and Lumber Co. v. Railway Co.

of such railroad company; or actions for damages on account of injury to person or property may be brought in the county in which the injury occurred."

The ruling is sustained.

It is also contended that several causes of action for penalties for failure to supply cars ordered are improperly joined in the petition with several causes of action for other damages resulting from the failure to supply such cars, and section 83 (Gen. Stat. 1901, § 4517) of the old civil code is cited as authority.

All of the causes of action are alleged as arising out of several transactions of the same character, viz.: the effort of one party to procure and the failure of the other to supply cars for the transportation of grain. The so-called penalties are in fact statutory damages. The damage to the plaintiff for failure to supply one car may, in fact, have been many dollars, or in case of the advance in the price of his grain, a delay in the time of the shipment may have been an actual benefit to him. The legislature did not leave the question of amount of damage to be settled by evidence, for the reason, perhaps, that the expense of litigating the question would render the law nugatory, but prescribed a certain sum which, no more and no less, could be recovered for failure to comply with the law each day and for each car. The language of the act is that the party in default "shall forfeit," etc. This is called a forfeiture or penalty, but it is in lieu of damages—is in fact damages. The uniting of these causes of action is fairly within the contemplation of section 83 of the old code of civil procedure. This court has liberally construed these provisions (*Mentzer v. Burlingame,* 71 Kan. 581) and section 88 of the new code is so broad that it remains no longer a question of construction. The construction is also authorized by *Railroad Co. v. Cook,* 37 Ohio St. 265, from the code of which state our civil code was adopted. This decision,

however, was made subsequently to the adoption of our code, and is, therefore, only advisory.

The next contention is that chapter 286 of the Laws of 1901 is unconstitutional as in violation of section 16 of article 2 of the constitution. The title of chapter 345 of the Laws of 1905, which amended the act of 1901, reads: "An act relating to the transportation of freight by railroads and other common carriers, and amending section 5982 of chapter 84 of the General Statutes of 1901." It is said in *Division of Howard Co.*, 15 Kan. 194:

"The 'subject' to be contained in a bill, under section 16, article 2, of the constitution, which provides that 'no bill shall contain more than one subject, which shall be clearly expressed in its title,' may be as broad and comprehensive as the legislature may choose to make it. It may include innumerable minor subjects, provided all these minor subjects are capable of being so combined as to form only one grand and comprehensive subject; and, if the title to the bill containing this grand and comprehensive subject is also comprehensive enough to include all these minor subjects, as one subject, the bill, and all parts thereof, will be valid." (Syl. ¶ 4; see, also, *Woodruff v. Baldwin*, 23 Kan. 491, 494.)

If the former title was defective, the defect was cured by the latter.

The several causes of action set forth in the petition and upon which the plaintiff relies are connected with the transportation of freight. The uniform course of this court has been to interpret the provisions of the constitution liberally so as not to defeat an act of the legislature, and yet to give full force to each constitutional provision, which is, that a provision of law should not be slipped into an act, which provision may affect the interests of the citizen but may escape his observation or the attention of members of the legislature whose duty it is to scrutinize the enactment, by reason

of being entirely foreign to the title of the act. In *The State v. Barrett,* 27 Kan. 213, it was said:

"In order to correctly interpret that provision of section 16, article 2 of the constitution, which provides that 'No bill shall contain more than one subject, which shall be clearly expressed in its title,' its object must be taken into consideration; and the provision must not be construed or enforced in any narrow or technical spirit, but must be construed liberally on the one side, so as to guard against the abuse intended to be prevented by it, and liberally on the other side, so as not to embarrass or obstruct needed legislation." (Syl. ¶ 3.)

Again, we are asked to reconsider whether the act in question is not an interference by the state with interstate commerce and in violation of the constitution of the United States as being an encroachment on the powers of congress, and it is conceded that the question has been decided by this court in *Patterson v. Railway Co.,* 77 Kan. 236. We have reëxamined the argument and authorities on this question, and it is sufficient to say that we are satisfied with the decision in the Patterson case.

It is also contended that the act in question is in violation of the federal constitution in that it does not grant equal protection to the shipper and carrier. It is conceded that provisions are made for forfeiture or penalties against the shipper who orders the cars and does not use them as well as against the railroad company for not furnishing cars. The act is called a mutual demurrage law and it seems to us affords equal protection to the company and to the shipper. It provides, in substance, that the shipper shall, upon ordering the car, deposit one-fourth of the freight charges for the use thereof, unless the railroad company should agree to deliver the car without such deposit, and that the shipper shall within forty-eight hours, computing from seven A. M. the day following the placing of the car or cars, fully load the same, and upon the failure to do so, he shall forfeit and pay to the company the sum

of one dollar per day for each car not used while held subject to the applicant's order, and if the said applicant shall not use the car so ordered by him and shall notify the company, or its agent, he shall forfeit to the railroad company, in addition to the penalty herein prescribed, the actual damages that such company may sustain by the failure of said applicant to use said cars. The law is specific that the shipper shall forfeit a dollar per day from the time the car or cars are placed, unless he uses the same within forty-eight hours. The subsequent provision in regard to his notifying the company is in the absolute control of the company. At any time after the expiration of the forty-eight hours the shipper must on the application of the company, as a necessary inference from the act, either release the car or cars or use them, and so the question of notice does not depend upon his will but upon his action, of which the company has full notice. It knows, of course, when each car is placed, how long it is detained, and presumably has sufficient of the shipper's money in its hands to satisfy any penalty incurred. We think that the law affords equal protection to shipper and carrier.

Another objection is that the applications were indefinite. There is evidence, undisputed, that the company's agent required the use of the blanks furnished by the railroad company. Yet it is contended that the clause specified the time at which the cars were required, "or as soon thereafter as cars can be furnished," implied that the time of delivery was left to the convenience of the company. The company could not arbitrarily compel the use of a blank containing this clause and then avail itself of the clause as an excuse for not complying with the order. It is said the shipper could have prepared his own form. It is in evidence that he informed the agent he preferred to do so, but the agent said he would not receive orders except upon the blanks furnished.

It is further said that no acceptance of the order was necessary. Perhaps this was true, if the shipper was simply laying the ground for a lawsuit and was not in good faith ordering the cars for the purpose of using them in its business, but to actually get cars for use it seems from the evidence that it was necessary to comply with the demands of the company's agent and the agent is presumed to have acted in accordance with his instructions from the company.

Another contention is that the court erred in admitting hearsay testimony by a Mr. Smith, manager of the plaintiff corporation, as to the amount of grain he had on hand to fill the cars, etc., which it was claimed was not within his personal knowledge, but was derived from the books of the company, reports of subordinates, etc. If the rule contended for by the appellant is correct, it would render it impossible in the management of large concerns to furnish evidence concerning many of the affairs of the company unless bits of paper, upon which workmen jot down memoranda of their doings, were preserved and verified by their evidence. We can not enforce such a rule.

It is further contended that there was evidence of unavoidable accident, which prevented the appellant from furnishing cars, in that there was a sudden and unexpected demand for freight cars of this character beyond the ability of the company to furnish, and that the company could not discriminate in favor of the appellee as against other shippers. This is a question of fact, however, which the court considered and on which there was evidence, pro and con, and it is a rule of this court not to disturb such a finding.

In its oral argument the appellant urged that a large proportion of these cars ordered were actually used for through shipment of grain to some point in Texas and not to Winfield, Kan., which the demand designated as the terminus. The court allowed claims against the company for a part of the cars and refused

to allow claims for a large number, and no evidence is called to our attention by which we can tell whether there were more used for through shipment than the number for which claims were disallowed. It is to be presumed, in the absence of any showing, that the court found in accordance with the evidence.

The judgment is affirmed.