No. 21,719.

THE FARMERS GRAIN AND MERCANTILE COMPANY, *Appellee*, v.
THE UNION PACIFIC RAILROAD COMPANY, *Appellant*.

### SYLLABUS BY THE COURT.

1. SHIPPING CONTRACT—*Recital in Bill of Lading—Not Conclusive.* A
   recital in a bill of lading that a shipment covered thereby is made
   under a particular order for a car is evidence of the facts stated in
   the recital, but it is not conclusive evidence' thereof and may be re-
   butted.

2. SAME—*Delay in Furnishing Cars—"Exemplary Damages"—Instruc-
   tions.* In an action to recover the exemplary damages named in sec-
   tion 8423 of the General Statutes of 1915, it is error for the court to
   refuse to give an instruction that the plaintiff cannot recover if the
   shipments were to be a part of interstate commerce, where the evi-
   dence is not clear as to whether or not the shipments were to be made
   to points within or without the state.

3. SAME—*"Exemplary Damages" as Prescribed by Statute.* The ex-
   emplary damages named in section 8423 of the General Statutes of
   1915 are not such damages as have been termed exemplary in actions
   in which it has been held that such damages cannot be recovered un-
   less actual damages are proved.

4. SAME—*Application for Cars—Deposit of Money by Shipper.* Where
   a person makes a written application to a carrier for a car, under
   section 8421 of the General Statutes of 1915, and the carrier does
   not require any deposit to be made as prescribed by section 8424,
   and the applicant does not tender any deposit, it is for the jury to
   determine whether the· applicant elected to order the car without
   making such deposit.

5. SAME—*Milling-in-transit Privileges—Shipment Not Rendered Inter-
   state Commerce.* A milling-in-transit privilege on a car of grain
   shipped from one point to another point within this state, where all
   connection of the shipper with the grain ceases at such point, does not
   render the shipment interstate commerce, although the consignee at
   the. point of destination may, under the milling-in-transit privilege,
   ship the grain, or its product, to a point outside the state.

Appeal from Wyandotte district court, division No. 3·; WIL-
LIAM H. McCAMISH, judge. Opinion filed October 12, 1918.
Reversed.

*R. W. Blair, T. M. Lillard, A. M. Hambleton,* all of Topeka, and *A. L. Berger,* of Kansas City, for the appellant.

*J. K. Cubbison,* of Kansas City, *Hal R. Lebrecht,* and *A. J. Bolinger,* both of Kansas City, Mo., for the appellee; *C. W. Smith,* of Topeka, of counsel.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff brought this action, consisting of twenty-six causes of action, under section 8423 of the General Statutes of 1915, to recover the $5 a day damages given by that statute for delay in furnishing cars ordered by the plaintiff from the defendant. Judgment was rendered in favor of the plaintiff for $2,035, and the defendant appeals.

The defendant argues that the court erred in excluding evidence to show that the cars were ordered for shipments in interstate commerce; that the court refused to instruct the jury concerning interstate shipments; that the plaintiff was not entitled to exemplary damages; and that the plaintiff elected to order cars without making a deposit. These matters will be discussed in the order stated.

The plaintiff was engaged in operating a grain elevator at Gorham, Kan., and was buying grain for shipment to points within and without the state. It gave to the defendant written orders for cars in which to ship grain. These orders were, in form, as follows:

"Application for Cars '239.'
"GORHAM, KANSAS, 12-10-1915.
"To the Union Pacific Railway Company, and its agents in charge of transportation at Gorham, Kansas.

"We hereby apply for one capacity — amount loaded — empty grain cars which we desire to load with grain for transportation to Kansas City or line, said cars to be delivered on the 10th day of December, 1915, at our elevator.        "THE FARMERS GRAIN & M. Co., *Shipper.*
                    "By R. C. LAWRENCE, *Mgr.*

"The Union Pacific Railway Company hereby acknowledges the above application for cars.        By W. T. VAUGHN, *its Agent.*"

Different orders bore different dates, and the orders were numbered consecutively. When a shipment was made, the bill of lading was made out by the plaintiff, and a notation was made thereon showing that the shipment was made under

Mercantile Co. v. Railroad Co.

a certain numbered car order. The bill of lading was then signed by the defendant's agent. There was delay in furnishing cars under the orders.

1. The defendant, by cross-examination of the plaintiff's witnesses, and on the introduction of its evidence in defense, sought to show that the orders were given for cars to be used in shipments in interstate commerce, but the evidence was excluded. The defendant had pleaded that the orders had been given for cars to be used in interstate transportation. The plaintiff contends that the notation made on the bill of lading was a part of the contract, and that it could not be contradicted, varied, nor altered by parol evidence. The plaintiff's contention is not good. The notation was a recital of a past act, and it might be true or not. It was evidence of that fact, but it was not conclusive evidence. It was no part of the contract of shipment. It was proper to introduce evidence to show that the orders were made for cars to be used in interstate transportation. (*Rose and others v. Madden,* 1 Kan. 445; 4 R. C. L. 12; 10 R. C. L. 1018; 17 Cyc. 708; 1 Greenleaf on Evidence, 16th ed., § 285.) The evidence should have been admitted on cross-examination, where such cross-examination was proper, and should have been admitted when offered by the defendant to establish its defense. But the error is not available to the defendant, for the reason that there is nothing to show that the excluded evidence was produced on the hearing of a motion for a new trial. (Civ. Code, § 307; *Muenzenmayer v. Hay,* 98 Kan. 538, 159 Pac. 1; *McAdow v. Railway Co.,* 100 Kan. 309, 164 Pac. 177.)

2. The defendant requested the court to instruct the jury as follows:

"A number of the applications for cars introduced in evidence by plaintiff are applications for cars to load with grain for transportation to 'Kansas City or line point.' I instruct you that if you find and believe from the evidence that the defendant company understood and believed in good faith that such applications were applications for cars to be loaded with grain for transportation to Kansas City, Missouri, then the railroad company had a right to treat such application as an application for a car to be used in interstate commerce, and there can be no liability in this action under the Kansas law for failing to furnish a car in compliance with such application."

34—Kan.—3099.

The law of this state does not control if the cars were ordered for shipments in interstate commerce. (*Chi., R. I. &c. Ry. v. Hardwick Elevator Co.*, 226 U. S. 426.)

In sixteen of the plaintiff's causes of action, the orders were for shipments to be made to "Kansas City or line." What was meant by these orders? There are two Kansas Citys; one in this state, and one in Missouri. Which one of these cities was meant by these orders? If they were for cars for shipments to Kansas City, Mo., the plaintiff cannot recover on the causes of action based thereon. The plaintiff's testimony showed that it sometimes shipped grain to Kansas City, Mo. The orders, with their ambiguity and the plaintiff's testimony, were sufficient to require that the question of interstate commerce be submitted to the jury. The error committed in refusing to instruct the jury concerning the interstate-commerce features of the action was prejudicial.

3. The defendant argues that the plaintiff is not entitled to exemplary damages for the reason that no actual damages were alleged or proved. The proposition presented is one of statutory construction. The statute involved is section 8423 of the General Statutes of 1915, which, in part, reads:

"When the cars are applied for under the provisions of this chapter, if they are not furnished, the railway company so failing to furnish them shall pay to the party or parties so applying for them the sum of five dollars per day for each car failed to be furnished as exemplary damages, to be recovered in any court of competent jurisdiction, and all actual damages that such applicant may sustain for each car failed to be furnished."

The statute names the damages as exemplary damages. These damages are not such as have been termed exemplary damages in actions where it has been held that such damages cannot be recovered unless actual damages are established. The damages given are statutory, and are fixed as a matter of public policy. The legislature had power to fix these damages for a failure on the part of a carrier to comply with the statute. (*Perkins v. Matteson*, 40 Kan. 165, 19 Pac. 633; *Joyce v. Means*, 41 Kan. 234, 20 Pac. 853; *Grain and Lumber Co. v. Railway Co.*, 85 Kan. 281, 116 Pac. 906; *Vosburg v. Railway Co.*, 89 Kan. 114, 130 Pac. 667.)

4. The defendant argues that the plaintiff elected to order

cars without making a deposit as required by section 8424 of the General Statutes of 1915. That statute, in part, reads:

"Such applicant shall, at the time of applying for such car or cars, if specifically required so to do, deposit with the agent of the company one-fourth of the freight charges for use of such car or cars; otherwise the company shall not be excused for not furnishing cars on account of failure to make tender on the part of any shipper. . . . *Provided,* That if any applicant shall elect to order cars without a deposit, as provided in this section, neither party shall be liable for the penalties prescribed in this and the preceding section."

The defendant did not request that a deposit be made. The plaintiff made no deposit, although it tendered money a few times. Did the plaintiff elect to order cars without making a deposit? The answer to that question is not one of law, but one of fact, and must be made by triers of fact. Again, the error is of no avail to the defendant, because it did not request any instruction covering the proposition.

5. All the shipments involved were made with a milling-in-transit privilege. This privilege is one by which a shipper from the milling-in-transit point gets an advantage in freight rates. The evidence tended to show that the plaintiff's shipments were made to a milling point; that the plaintiff's connection with the shipments ceased at that point; that the privilege was given to the customer, or the shipper from the milling point, and not to the plaintiff; that it received no direct benefit from that privilege; and that the plaintiff did not know where any of the shipments finally went. A shipment from a point in Kansas to a milling point in Kansas, where the connection of the shipper with the shipment absolutely ceases, is not any part of interstate commerce, although the consignee may take advantage of the milling-in-transit privilege. (*Larabee v. Railway Co.,* 74 Kan. 808, 88 Pac. 72; *Coe v. Errol,* 116 U. S. 517; *Gulf, Colorado & Santa Fe Ry. Co. v. Texas,* 204 U. S. 403; *Chi., Mil. & St. P. Ry. v. Iowa,* 233 U. S. 334; *Kempner v. M. K. & T. Ry. Co.,* 37 I. C. C. Rep. 396; *Illinois Grain to Chicago,* 40 I. C. C. Rep. 124.)

The judgment is reversed, and a new trial is ordered.