No. 22,241.

THE OFFERLE GRAIN AND SUPPLY COMPANY, *Appellant,* v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellee.*

### SYLLABUS BY THE COURT.

1. RECIPROCAL DEMURRAGE ACT—*Act Not Discriminative—Delay in Furnishing Cars.*   The reciprocal demurrage act (Gen. Stat. 1915, §§ 8421-8424), which provides statutory damages against a railway company for delay in furnishing freight cars, and which provides similar statutory damages in favor of a railway company against a shipper for delay in loading and using the cars furnished, does not discriminate against the railway carrier.

2. SAME.   The prior decisions of the federal supreme court and of this court have not materially affected the reciprocal demurrage act as a whole.

3. SAME—*Deposit of Freight Charges by Shipper.*   A shipper's failure to make a partial deposit of freight charges at the time it applied for freight cars does not bar a recovery against the railway carrier for delay in furnishing the cars, unless the carrier made a demand for such partial deposit and the shipper declined to comply therewith.

Appeal from Edwards district court; ALBERT S. FOULKS, judge.   Opinion filed July 5, 1919.   Reversed.

*W. E. Broadie,* of Kinsley, for the appellant.

*William R. Smith, Owen J. Wood, Alfred A. Scott,* all of Topeka, and *William Osmond,* of Great Bend, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This action was brought to recover certain statutory penalties for the failure of the defendant railway

company to furnish freight cars for plaintiff's use in intrastate commerce.

Plaintiff's petition alleged that it was a corporation engaged in the business of buying, shipping and selling grain at Offerle, in Edwards county; that at various dates in the latter half of 1916 it filed with the defendant's local station agent written applications and orders for freight cars for the shipment of wheat to Hutchinson, Wichita, and other Kansas points; and that the defendant railway company failed and neglected to furnish such cars for many days, each instance being particularly specified. For these alleged derelictions plaintiff claimed a large sum of money, calculated upon the number of days of delay at the statutory allowance of five dollars per car per day.

Defendant's demurrer to this petition was sustained. Plaintiff appeals. To review this ruling requires an examination of certain provisions of statute:

Section 8420 of the General Statutes of 1915 makes it the duty of railway companies to furnish cars to all persons, without discrimination, who may apply therefor in good faith, for the transportation of freight with reasonable dispatch.

The other pertinent paragraphs of the statute read:

SECTION 8421. "When the owner, manager or shipper of any freight of any kind shall make application in writing to any superintendent, agent or other person in charge of transportation of any railroad company, receiver, or trustee, operating a line of railway at any point, that cars are desired upon which to ship any freight, it shall be the duty of such railway company, trustee or other person in charge thereof to supply the number of cars so required at the point indicated in the application within a reasonable time thereafter, not to exceed six days from the receipt of such application, and shall supply such cars to the person or persons so applying therefor in the order in which such applications are made, without giving preference to any persons: *Provided*, If the application be for ten cars or less, the same shall be furnished in three days: *And provided further*, That if the application be for thirty cars or more, the railway company may have ten full days in which to supply the cars. The time provided in this act for the furnishing of cars as hereinbefore set out shall be deemed a reasonable time, but this shall not be construed as excusing such railroad from the duty of furnishing such cars in a less time than the time mentioned in this act when a less time is reasonable, and the shipper makes application for such cars to be furnished in a less time: *Provided*, That whenever any railroad company is prevented from complying with such demand to furnish cars as aforesaid by any accidental of unavoidable cause, which could not by the use or [of]

reasonable foresight and diligence have been avoided, and supplies the same in a reasonable time thereafter, or offers to do so, then the liability for the damages herein provided for and for actual damages and attorney's fees shall not accrue."

SECTION 8423. "When the cars are applied for under the provisions of this chapter, if they are not furnished, the railway company so failing to furnish them shall pay to the party or parties so applying for them the sum of five dollars per day for each car failed to be furnished as exemplary damages, to be recovered in any court of competent jurisdiction, and all actual damages that such applicant may sustain for each car failed to be furnished, together with reasonable attorney fees, to be recovered in any court of competent jurisdiction; but nothing in this act shall in any wise affect the right or remedy of any shipper or other person, as the same may exist at common law or under any statute, to recover on account of failure, delay or refusal to furnish cars, nor to exempt in any wise any such railroad company from any of the provisions of the railroad laws of this state or from any of the obligations imposed upon railroad companies and common carriers by the common law."

SECTION 8424. "Such applicants shall, at the time of applying for such car of cars, if specifically required so to do, deposit with the agent of the company one-fourth of the freight charges for use of such car or cars; otherwise the company shall not be excused for not furnishing cars on account of failure to make tender on the part of any shipper: *Provided,* That such one-fourth does not exceed the sum of ten dollars per car; and such applicant shall, within forty-eight hours, computing from seven a. m. the day following the placing of the car or cars, after such car or cars have been delivered and placed, as hereinbefore provided, fully load the same, and upon failure to do so he shall pay to the company the sum of five dollars per day for each car not used, while held subject to the applicant's order: *Provided,* That where applications are made on several days, all of which are filed on the same day, the applicant shall have forty-eight hours to load the car or cars furnished on the next application, and so on; and the penalty prescribed shall not accrue as to any car or lot of cars applied for on any one day until the period within which they may be loaded has expired. And if the said applicant shall not use such cars so ordered by him, and shall so notify the said company or its agent, he shall forfeit and pay to the said railroad company, in addition to the penalty herein prescribed, the actual damages that such company may sustain by the said failure of the said applicant to use said cars: *Provided,* That if any applicant shall elect to order cars without a deposit, as provided in this section, neither party shall be liable for the penalties prescribed in this and the preceding section."

The defendant seeks to justify the trial court's ruling on the demurrer by a discussion of three propositions:

1. The act, while professing to be reciprocal in its terms, discriminates against the carrier.

2. Prior federal and state adjudications as to the partial invalidity of the act render it invalid as a whole.

3. Plaintiff's failure to make a partial deposit of freight charges on the cars ordered bars it from recovering the statutory penalties.

These contentions will be noted in order. While this statute is commonly known and designated as the reciprocal demurrage law, yet it is mainly a regulatory enactment under the state's general police power. As such, it does not necessarily have to be exactly reciprocal in all its parts. So far as concerns those duties which the carrier as a public-service corporation has assumed, they may be enforced by police regulations, whether such regulations should be similarly framed to fit the circumstances of the carrier's private patrons, the shippers, or not. Certain details of this act not pertinent to this lawsuit are pointed out by defendant, but our discussion must be restricted to the questions properly involved in the instant case. The present action is for five dollars per day for each car which defendant failed to furnish within the time allowed by law. (Gen. Stat. 1915, §§ 8421-8424.) This allowance is designated in the statute as "exemplary damages" and as "penalties." The name is unimportant. It is a statutory allowance of damages for neglect to perform a legal duty; it is a legislative estimate of the damages usually attendant on such delinquency. In *Grain and Lumber Co. v. Railway Co.,* 85 Kan. 281, 283, 116 Pac. 906, it was said:

"The so-called penalties are in fact statutory damages. The damage to the plaintiff for failure to supply one car may, in fact, have been many dollars, or in case of the advance in the price of his grain, a delay in the time of the shipment may have been an actual benefit to him. The legislature did not leave the question of amount of damage to be settled by evidence, for the reason, perhaps, that the expense of litigating the question would render the law nugatory, but prescribed a certain sum which, no more and no less, could be recovered for failure to comply with the law each day and for each car. The language of the act is that the party in default 'shall forfeit,' etc. This is called a forfeiture or penalty, but it is in lieu of damages—is in fact damages."

Our attention is directed to that feature of the act which provides for actual damages sustained by the shipper for the carrier's failure to furnish cars, in addition to the statutory damages. (Gen. Stat. 1915, § 8423.) But plaintiff seeks no recovery under the provision for actual damages. If the allow-

ance of five dollars per day were in fact *penal* or *exemplary* it . might be recovered in addition to actual damages, when the latter were once proved, but not otherwise. (*Schippel v. Norton*, 38 Kan. 567, 16 Pac. 804; *Ramey v. Telegraph Co.*, 94 Kan. 196, 146 Pac. 421.) But the proper interpretation of the provision allowing "actual damages" in addition to the pre-scribed statutory damages of five dollars per car per day for delay, if not completely clarified in *Grain and Lumber Co. v. Railway Co.*, supra, as quoted above, cannot be settled here, since no "actual damages" other than those which may be con-sidered as merged or included in the statutory damages are demanded.

The provision for attorney's fees has been eliminated by the decision of the United States supreme court (*Atchison & Santa Fe Ry. v. Vosburg*, 238 U. S. 56) ; and the latest of our own decisions lays at rest any lingering notion that the act concerns itself with delays in the furnishing of cars for use in interstate commerce (*Mercantile Co. v. Railroad Co.*, 103 Kan. 527, 175 Pac. 599).

So far as the statute is concerned, we fail to discern any seri-ous discrepancy in its reciprocal features, assuming that sub-stantial reciprocity between the respective rights, duties and liabilities of the carrier and the shipper would be necessary to uphold it. If the carrier fails to furnish the cars within the time allowed, it is liable to the shipper in the sum of five dollars per car per day. If the shipper fails to use the car within the time allowed, he must pay the carrier five dollars per day for his delay. That far the matter is precisely reciprocal. Gener-ous provision is made by the statute to excuse the carrier for unavoidable delays in furnishing cars.

"*Provided*," says the statute, "That whenever any railroad company is prevented from complying with such demand to furnish cars as afore-said by any accidental or unavoidable cause, which could not by the use or [of] reasonable foresight and diligence have been avoided, and sup-plies the same in a reasonable time thereafter, or offers to do so, then the liability for the damages herein provided for and for actual damages and attorney's fees shall not accrue." (§ 8421.)

This provision was discussed by the chief justice in *Milling Co. v. Railway Co.*, 82 Kan. 256, 108 Pac. 137 :

"The contention there [*Patterson v. Railway Co.*, 77 Kan. 236, 94 Pac. 138] was that the regulations of the statute were so unreasonable

Grain Co. v. Railway Co.

and drastic as to transcend the regulating power of the legislature. It was . . . held that to be within the police power of the state these regulations must be reasonable. It was recognized that .if the statute made absolute requirements with which the carrier could not comply, or which were unreasonable and oppressive, it could not be sustained. To uphold the statute a liberal view was taken of the provision that the carrier should not be liable to penalties for strikes, unavoidable accidents or other public calamities. . . . It is the duty of a railway company to provide such equipment and cars as will meet not only the ordinary and usual requirements of the traffic but also such increase of traffic and demand for cars as can be reasonably anticipated. If, however, there is a rush of business or a congestion of traffic which could not reasonably have been foreseen and a delay arises from circumstances wholly beyond the control of the company, it should be regarded as abnormal and such an unavoidable accident as will relieve the company from the penalties of the act." (pp. 263, 265.)

While that provision of the statute seems fair and just, there is nothing in the statute precisely reciprocal thereto for the shipper's benefit. It was hardly practical to make it so. The shipper ordinarily knows positively when he can use the cars; the carrier cannot always know for certain when it can furnish them. The statute provides that the liability of the shipper shall continue so long, but only so long, as the cars are held unused "subject to the applicant's order." The act contemplates that ordinarily the carrier can and should furnish the cars promptly, and penalizes it for delays without good excuse. A good excuse will altogether absolve the carrier. And the act contemplates that ordinarily the shipper can and should use the furnished cars promptly, and it penalizes him for delays in loading the cars; and the shipper's liability will continue, as it justly should, until he notifies the carrier that he will not use the cars. That notification will terminate, but not discharge, a shipper's liability which has then accrued. This seems to be no serious departure from practical reciprocity or practical justice; and it seems to be the proper construction of the act, when read in the light of our own and the federal supreme court's prior adjudications on this general subject—unless we are to adopt defendant's view that the prior decisions of this court and the federal supreme court so materially affect the statute as a whole that no part of it should be allowed to stand.

Let us pass to that question. What prior adjudications have affected the scope of this act? There was the Vosburg case, in

which the federal supreme court held the provision allowing an attorney's fee for the shipper in a successful suit against the carrier for penalties unconstitutional. (*Atchison & Santa Fe Ry. v. Vosburg,* 238 U. S. 56.) That infirmity was an inconsequential detail. What has this court said which abridges the scope of the act? The decision in *Patterson v. Railway Co.,* 77 Kan. 236, 94 Pac. 138, upholding a penalty of one dollar per day for failure to furnish cars for use in interstate commerce, was rendered before the act was amended in 1907; and it was based upon the federal supreme court's ruling in *Houston & Tex. Cent. Railroad v. Mayes,* 201 U. S. 321, which admitted that a Texas statute imposing $25 per day for failure to furnish cars, while invalid, was "not far from the line of proper police regulation."

In *Shipping Association v. Railway Co.,* 90 Kan. 264, 133 Pac. 883, the statute, as amended, was upheld chiefly on the theory that the shipments delayed by failure to furnish cars were between points in Kansas, and that the shipper was not concerned in certain arrangements, of which he knew nothing and to which he was not a party, which existed between the consignee and the carrier, by which the shipments, after "milling in transit," were to move forward into interstate commerce on the balance of a through rate from the first shipping point. However, this decision did not concede that the five dollars per day penalties could not be applied if the cars delayed were for use in interstate commerce.

But in the recent case, *Mercantile Co. v. Railroad Co.,* 103 Kan. 527, 175 Pac. 599, it was squarely held that our act did not concern itself with interstate commerce, and that it dealt only with intrastate carriage. This was merely the correct and unequivocal declaration which might have been made with certainty at any time since the federal decision in *Chi., R. I. &c. Ry. v. Hardwick Elevator Co.,* 226 U. S. 426. A correct interpretation of an act is not an impairment of it, and the decision in the Mercantile Co. case has had no effect on the statute as a whole. This leaves it necessary only to consider the effect of the decision in the case of the Grain and Lumber Co., *supra,* where the statutory "penalties" and "exemplary damages" were declared to be in lieu of damages. That decision did impair the act. The act provided for "exemplary damages" or

"penalties" against the carrier for failure to furnish cars, and against the shipper for failure to load and use the cars, and provided also, in addition thereto, for actual damages for both shipper and carrier. The effect of the Grain and Lumber Co. interpretation was simply to hold that the provision for "actual damages" was reckoned to be merged in the statutory damages of five dollars per day. That decision was rendered in 1911. If that decision did not correctly interpret the legislative purpose, it would seem that the legislature would have set the matter right by subsequent amendment, as it has had several opportunities to do so since 1911. Summarizing, then, what the courts have done to this act: It has been held that the provision for attorney's fees is void; it has been held that the act does not govern delays in furnishing cars for interstate use; and it has been held that the "exemplary damages" or "penalties" are all the damages the shipper may recover; and, doubtless also, all the damages the carrier may recover.

We are of the opinion that these decisions have not materially impaired the act as a whole. We think the subject matter so important to the commercial welfare of this state, so important to the carriers and shippers alike, that the legislature would have enacted it if the members had been authoritatively advised that an attorney's fee could not be assessed against the carrier which might lose its lawsuit unless the carrier were also awarded an attorney's fee if it won the lawsuit. We think the legislature would have provided statutory damages for delays in furnishing or loading freight cars for use in intrastate commerce if it had been authoritatively instructed that such penalizations in interstate commerce were not its concern but that of congress. We think that the legislature would have enacted the statute, even if it had known that technical penalties must go to the school fund, and not to the complaining party, and that technical "exemplary damages" could only be awarded where technical "actual damages" were pleaded and proved. We think the legislature has shown itself to be fully satisfied with the interpretation of the "penalty" and "exemplary damage" provisions of the statute which this court has made; and this court is of opinion that the various separate regulatory details covered by the act are so important that the presumption should be indulged that the legislative intention was to regulate each of them, no matter what might happen to any of the

merely incidental features of the act when judicially scrutinized under constitutional tests.

Let us next examine defendant's third point—the plaintiff's failure to make a partial deposit of freight charges on the cars ordered. Does that failure bar a recovery? Not necessarily. The statute provides that the shipper shall make a deposit of one-fourth of the freight charges for the cars ordered, "if specifically required to do so." Unless plaintiff was specifically required to do so by the carrier, it was not bound to do so as a condition precedent to a recovery for defendant's dereliction. (*Mercantile Co. v. Railroad Co.*, supra.) If specifically required to put up a partial deposit, the shipper might decline, but if it does decline it cannot have a recovery. This matter is fairly reciprocal. The carrier need not demand the deposit, but it will not forfeit its right to demurrage if it does not make the demand. The shipper need not tender a deposit, if it is not demanded, and it will not forfeit its right to the statutory penalty by a mere failure to tender what the carrier has failed to demand. The immunity from penalties arises where the carrier specifically demands the advance freight charges and the shipper elects not to pay them. The carrier has a slight advantage here, because it may always make the demand, and if the demand is complied with it may recoup or partly recoup its damages from the shipper's deposit without resort to litigation if the latter fails to use the cars promptly. The shipper has no precise offset to that advantage, but the matter as a whole is an approximation of justice.

It must be borne in mind that this case is only here on a demurrer to a petition. What the facts were touching a demand for advance freight charges were not pleaded, and did not have to be pleaded. The defendant can plead those facts; they are or may be part of defendant's case. A careful scrutiny of the petition and of the date on which it was filed seems to disclose that part of these demurrage claims may be barred by lapse of time (*Milling Co. v. Railway Co.*, 82 Kan. 256, 108 Pac. 137), but that is not urged now, and can be taken care of in the further proceedings. The demurrer to plaintiff's petition should have been overruled.

The judgment is reversed, and the cause is remanded for further proceedings consistent herewith.