## SEEGERS BROS. v. SEABOARD AIR LINE RY.

1. CONSTITUTION—COMMON CARRIERS—RAILROADS—FREIGHT.—ACT 24 STAT., 81, providing that common carriers shall adjust claims for damages or loss to freight within a specified time, and if not then to be liable to a penalty, is not in violation of the 14th amendment of the U. S. Constitution or of art. I., sec. 5, of Constitution of this State.

2. APPEAL—MAGISTRATE.—Finding of magistrate as to amount of damages or loss of freight affirmed by Circuit Judge cannot be reviewed by this Court if there be any evidence to support it, there being such evidence here.

Before WATTS, J., Chesterfield, May, 1904.    Reversed.

Action by Seegers Bros. against Seaboard Air Line Railway. From judgment of Circuit Court reversing judgment of Magistrate S. H. Reid, plaintiffs appeal.

*Mr. W. P. Pollock,* for appellants, cites: 31 S. E., 330; 41 S. E., 522, 108; 165 U. S., 150; 38 S. C., 116; 165 U. S., 1, 258; 115 U. S., 112.

*Messrs. Stevenson & Mathison* and *Edward McIver,* contra.    *Mr. McIver* cites: 165 U. S., 150; 63 S. C., 180; 65 Ala., 193; 60 Miss., 641; 70 Mich., 382; 49 Ark., 492; 6 Neb., 37; 141 Ill., 171; 147 Ill., 66; 28 Wis., 464; 69 S. C., 322.

November 13, 1905.    The opinion of the Court was delivered by

MR. JUSTICE JONES.    This action was commenced in a magistrate court for the County of Chesterfield, to recover $1.75 for loss or damage to freight, a bunch of bananas, shipped August 31, 1903, to plaintiffs at McBee, S. C., from Columbia, S. C., over defendant's line, and for $50 penalty for failure to adjust and pay the said loss or damage within forty days, as required by the statute. The magistrate rendered judgment for the whole amount claimed, including

the penalty.　On appeal to the Circuit Court, Judge Watts modified the judgment of the magistrate by reducing the amount to $1.75 and costs, holding that the statute imposing the penalty is unconstitutional, under the rule stated in *Gulf, Colorado & Santa Fe Ry. Co.* v. *Ellis,* 165 U. S., 150. From this judgment, plaintiffs appeal, and the main question presented is the constitutionality of said statute.

The statute in question is entitled "An act to regulate the manner in which common carriers doing business in this State shall adjust freight charges and claims for loss or damages to freight," and was approved February 23, 1904, 24 Stat., 81.　Section 2 of said act, which more particularly concerns the present controversy, is as follows:

"Section 2.　That every claim for loss of or damage to property while in the possession of such common carrier shall be adjusted and paid within forty days, in case of shipments wholly within this State, and within ninety days, in case of shipments from without this State, after the filing of such claim with the agent of such carrier at the point of destination of the shipment: *Provided,* That no such claim shall be filed until after the arrival of the shipment or of some part thereof at the point of destination, or until after the lapse of a reasonable time for the arrival thereof.　In every case such common carrier shall be liable for the amount of such loss or damage, together with interest thereon from the date of the filing of the claim therefor until the payment thereof.　Failure to adjust and pay such claim within the periods respectively herein prescribed shall subject each common carrier so failing to a penalty of fifty dollars for each and every such failure, to be recovered by any consignee or consignees aggrieved in any court of competent jurisdiction: *Provided,* That unless such consignee or consignees recover in such action the full amount claimed, no penalty shall be recovered, but only the actual amount of the loss or damage, with interest as aforesaid: *Provided, further,* That no common carrier shall be liable under this act for property which never came into its possession, if it complies with the provi-

sions of section 710, vol. 1, of the Code of Laws of South Carolina, 1902."

This section was under consideration in the case of *Best* v. *Seaboard Air Line Railway,* 72 S. C., —, filed October 20, 1905, in which the question presented was whether an action could be maintained for the penalty alone, when there had been voluntary payment and receipt of the loss or damage before suit, but after the expiration of the time named in the statute. This Court held that such action could not be maintained. The Court used this language: "The object of the statute was not to penalize the carrier for merely refusing to pay a claim within the time required, whether just or unjust, but the design was to bring about a reasonably prompt settlement of all proper claims, the penalty, in case of a recovery in Court, operating as a deterrent of the carrier in refusing to settle just claims and as compensation of the claimant for the trouble and expense of the suit which the carrier's unreasonable delay and refusal made necessary." Under this view the common carrier is made liable for a penalty only in the event of a refusal to pay a claim for loss or damage to goods while in his possession, the *bona fides* and justice of the claim being established by a court of competent jurisdiction.

The present controversy requires the Court to go more fully into the consideration of the purpose of the legislation in question, with a view to ascertain the reasonableness of the classification of common carriers as objects of this particular legislation. Common carriers receive from the State the right to carry on business in the State as such. They are by the State endowed with special powers and privileges which call for special duties and obligations to the public. It is a duty which a common carrier owes, not only under his contract, but under general law, to promptly and safely deliver goods consigned to him for transportation, and he is liable for all loss or damage to such goods while in his possession, not occasioned by the act of God or the public enemy. The duty to make prompt settlement for loss or damage to

goods is but an incident of the duty to transport and deliver safely and with reasonable diligence. The statute in question was designed to effectuate an important public purpose, viz: to compel the common carrier to perform with reasonable diligence the duty which peculiarly appertains to his business as a carrier of freight. The penalty is but a means to that end. Whether the adoption of such means is wise, politic or adequate, is exclusively a legislative question, for the Courts have nothing to do with the policy, wisdom or expediency of legislation. A statute cannot be declared void unless it manifestly violates some constitutional principle.

This statute is assailed as violative of the equality clause of the fourteenth amendment to the Constitution of the United States and a similar provision in art. I., sec. 5, of the Constitution of this State. The respondents, in argument here, and the Circuit Judge relied on the Ellis case, *supra*, to sustain the position that the statute is unconstitutional. The Texas statute which was declared void in that case was as follows:

"Section 1. Be it enacted by the legislature of the State of Texas, That after the time that this act shall take effect, any person in this State having a valid *bona fide* claim for personal services rendered or labor done, or for damages, or for overcharges on freight, or claims for stock killed or injured by the train of any railway company, provided that such claim for stock killed or injured shall be presented to the agent of the company nearest to the point where such stock was killed or injured, against any railway corporation operating a railroad in this State, and the amount of such claim does not exceed $50, may present the same, verified by his affidavit, for payment to such corporation by filing it with any station agent of such corporation in any county where suit may be instituted for the same, and if, at the expiration of thirty days after such presentation, such claim has not been paid or satisfied, he may immediately institute suit thereon in the proper Court; and if he shall finally establish his claim, and

obtain judgment for the full amount thereof, as presented for payment to such corporation in such Court, or any Court to which the suit may have been appealed, he shall be entitled to recover the amount of such claim and all costs of suit, and in addition thereto all reasonable attorneys' fees: *Provided,* He has an attorney employed in his case, not to exceed $10, to be assessed and awarded by the Court or jury trying the issue."

The difference between the Texas statute and our statute is manifest. The Texas statute subjects railway companies to a penalty, when successfully sued "on a claim for personal services rendered or labor done, or for damages, or for overcharges on freight, or claims for stock killed or injured by the train of any railway company, etc." The relation of the railroad company to those who render it services or labor is the ordinary relation of employer and employee, and it may with some reason be said that there is no sufficient ground for making a distinction, such as would compel a railroad company to pay such ordinary claims for services within a given time under penalty, when no such obligation is imposed upon other employers to whom similar services are rendered. So, the claims for damages may include claims not substantially different from claims for damages against individuals and corporations generally. So, also, when there was no statute in Texas requiring railroad companies to fence their track against stock, it may be that it would be unreasonable to impose a liability for such acts different from, or greater than, the liability which should attach to the injury of stock by any other person or class. But we venture to say if the Texas statute had been confined to the regulation of some duty which particularly appertains to common carriers as such and imposed a penalty as a means of securing the performance of that duty, the decision of the Court would have been different. The Supreme Court of Texas had considered the statute *as a whole,* and had declared it was intended to compel the payment of debts. So considering it as a whole, the Court treated it simply as a statute singling

out railroad corporations alone and imposing upon them a penalty for failure to pay certain debts.

In the case of *Atchison etc. Railway Co.* v. *Matthews,* 19 Sup. Ct. Rep., 609, 610, 174 U. S., 96, the Court held that a Kansas statute requiring reasonable attorney's fee for the plaintiff in a recovery against the railroad company for damages from fire caused by operating its train, did not violate the fourteenth amendment. In the Matthews case, the Court reviewed the Ellis case, and called attention to the fact that the Texas statute was treated as a whole by the Texas Court, and was so treated by the Supreme Court of the United States. The Court said: "It is true, that the Ellis case was one to recover damages for the killing of a colt by a passing train. And so it might be argued that the protection of the track from straying stock and the protection of stock from moving trains would, within the foregoing principles, uphold legislation imposing an attorney's fee in actions against railroad corporations. We were not insensible to this argument when that case was considered, but we accepted the interpretation of the statute and its purpose given by the Supreme Court of Texas, as appears from this extract from our opinion: 'The Supreme Court of the State considered this statute as a whole, and held it valid, and as such it is presented to us for consideration. Considered as such, it is simply a statute imposing a penalty upon railroad corporations for a failure to pay certain debts.' " The Court further said: "So that, according to the interpretation placed upon the Texas statute by its Supreme Court, its purpose was generally to compel the payment of small debts, and the fact that among the debts so provided for was the liability for stock killed, was not sufficient to justify us in separating the statute into fragments, and upholding one part on the theory inconsistent with the policy of the State, while on the other hand, the purpose of this statute is, as declared by the Supreme Court of Kansas, protecting against fire—a matter in the nature of a police regulation." The Court further said: "It is the essence of a classification

that upon the class are cast duties and burdens different from those resting upon the general public. Thus, when the legislature imposes on railroad corporations a double liability for stock killed by passing trains, it says, in effect, that if suit be brought against a railroad company for stock killed by one of its trains, it must enter into the Courts under conditions different from those resting on ordinary suitors. If it is beaten in the suit, it must pay, not only the damage which it has done, but twice that amount. If it succeeds, it recovers nothing. On the other hand, if it should sue an individual for destruction of its live stock, it could, under no circumstances, recover any more than the value of that stock. So that it may be said that in matter of liability, in case of litigation, it is not placed on an equality with other corporations and individuals; yet this Court has unanimously said that this differentiation of liability, this inequality of right in the Courts, is of no significance upon the question of constitutionality. Indeed, the very idea of classification is that of inequality, so that it goes without saying that the fact of inequality in no manner determines the matter of constitutionality. Our conclusion in respect to this statute is that, for the reasons above stated, giving full force to its purpose as declared by the Supreme Court of Kansas, to the presumption which attaches to the action of a legislature that it has full knowledge of the conditions within the State, and intends no arbitrary selection or punishment, but simply seeks to subserve the general interest of the public, it must be sustained, and the judgment of the Supreme Court of Kansas is affirmed."

In the case of *Erb, Receiver,* v. *Morasch,* 20 Sup. Ct. Rep., 819, 820, 177 U. S., 584, it was held that an exception of a dummy railroad operated by steam, or of an electric railroad, from an ordinance limiting the speed of railroad trains within the city, does not make an unreasonable classification in denial of the equal protection of the laws. Responding to the suggestion that there was testimony that the operation of the street railway was in fact more dangerous than the

operation of the railroad in the hands of plaintiff, receiver, the Court said: "It is not a question to be settled by the opinion of witnesses and the verdict of a jury upon the question whether one railroad in its operation is more dangerous than another. All that is necessary to uphold the ordinance is that there is a difference and, that existing, it is for the city council to determine whether separate regulations shall be applied to the two * * * Given the fact of a difference, it is a part of the legislative power to determine what difference there shall be in the prescribed regulations."

In the case of *Fidelity Mut. L. Asso.* v. *Mettler*, 22 Sup. Ct. Rep., 662, 185 U. S., 308, over a strong dissenting opinion by Mr. Justice Harlan, in which Mr. Justice Brown concurred, pointing out that the decision was in conflict with the Ellis case, the Court nevertheless held, that a Texas statute imposing upon life and health insurance companies, upon failing to pay a loss within the time specified in the policy, after demand therefor, a liability to the holder of the policy, in addition to the amount of loss, of twelve per cent. damages and reasonable attorneys' fees, did not deny the equal protection of the law to such life and health insurance companies, although such an obligation was not imposed upon other classes of insurance companies or associations. This decision was reviewed in *Iowa Life Ins. Co.* v. *Lewis*, 23 Sup. Ct. Rep., 133, 187 U. S., 335, and the Court expressed satisfaction with the case and its reasoning. In the Mettler case, the Court said: "The ground for placing life and health insurance companies in a different class from fire, marine and inland insurance companies is obvious, and we think that putting them in a different class from mutual benefit and relief associations doing business through lodges, and benevolent associations of the character mentioned in the Texas statute, is not an arbitrary classification, but rests on sufficient reason. The legislature evidently intended to distinguish between life and health insurance companies engaged in business for profit (and we are not called on to refine as to the distribution of such profits), and lodges and associa-

tions of a mutual benefit or benevolent character, having in mind also the necessity of the prompt payment of the insurance money in very many cases in order to provide the means of living of which the beneficiaries had been deprived by the death of the insured."

It appears to us that there is even stronger reason for sustaining a classification of all common carriers of freight, for legislation with respect to their *quasi* public duties as such, having also in mind the necessity of the prompt payment of losses sustained by failure to perform said duty, as in many cases such losses represent food, raiment and other necessities of life.

In the case of *Farmers and Merchants Ins. Co.* v. *Dabney,* 23 Sup. Ct. Rep., 565, 189 U. S., 301, the Court held valid a Nebraska statute allowing a reasonable attorney's fee to a plaintiff in case of an unsuccessful defense by an insurance company of a suit on a policy of insurance covering real property wholly destroyed by fire. We quote the following from that case as a complete answer to the suggestion of inequality in the case at bar in the classification of common carriers for special legislation of the kind in question, and the suggestion of inequality because the penalty falls upon the common carrier when unsuccessful in the suit, but not upon the claimant when he is unsuccessful in the suit. The Court said:

"All the grounds relied upon to demonstrate that the statute allowing a reasonable attorney's fee in case of the unsuccessful defense of a suit to enforce certain insurance policies is repugnant to the equality clause of the 14th amendment are embraced in the following propositions: First, because it arbitrarily subjects insurance companies to a liability for attorneys' fees, when other defendants in other classes of cases are not subjected to such burden; second, because, whilst the obligation to pay attorneys' fees is imposed on insurance companies in the cases embraced by the statute, no such burden rests on the plaintiff in favor of the insurance companies where the suit on a policy is successfully

defended; and, third, because the statute arbitrarily distinguishes between insurance policies by allowing an attorney's fee in case of a suit on a policy covering real estate, where the property has been totally destroyed, and excluding the right to such fees in suits to enforce policies on other classes of property, or where there has not been a total destruction of the property covered by the insurance. Each and all of these propositions must rest on the assumption that contracts of insurance, generally considered, do not possess such distinctive attributes as to justify their classification separate from other contracts, and that contracts of insurance, as between themselves, may not be classified separately depending upon the nature of the insurance, the character of the property covered, and the extent of the loss which may have supervened. But the unsoundness of these propositions is settled by the previous adjudications of this Court," citing cases.

The case of *Missouri, Kansas & Texas R. R. Co.* v. *May,* 24 Sup. Ct. Rep., 638, 194 U. S., 267, is an interesting and striking case. In that case, the Court held that a Texas statute imposing a penalty in favor of contiguous land owners against railway companies for permitting Johnson grass or Russian thistle to mature and go to seed upon their road, does not deny such railway companies the equal protection of the law. It might be suggested that Johnson grass is a curse or a blessing according to the view point, a curse as to crops requiring clean cultivation, a blessing when hay is the thing wanted; or it might be suggested that Johnson grass could easily be communicated to the railway company's land or right of way by streams from bottom lands above; or that it might be propagated from seed dropped upon the ordinary highways from wagons hauling such hay, thence to lands adjoining, thence to the railway company's lands, thence to contiguous lands, but no such penalty applies against other carriers, against those in charge of ordinary highways, against a contiguous land owner, in favor of the railway company, or as between contiguous land owners.

It will be further observed that the legislation effected the railway company in its capacity as owner or occupant of the land or right of way. But the Court was guided in the decision of the case by these sound principles.

"When a State legislature has declared that, in its opinion, policy requires a certain measure, its action should not be disturbed by the Courts under the 14th amendment, unless they can see clearly that there is no fair reason for the law that would not require with equal force its extension to others whom it leaves untouched. * * * Great constitutional provisions must be administered with caution. Some play must be allowed for the joints of the machine, and it must be remembered that legislatures are the ultimate guardians of the liberties and welfare of the people in quite as great a degree as the Courts."

This Court, in *Simmons* v. *Telegraph Co.*, 63 S. C., 425, 41 S. E., 521, held that the statute making telegraph companies liable for mental anguish is not violative of the 14th amendment, or art. I., sec. 5, of the State Constitution, and in *Johnson* v. *Spartan Mills*, 68 S. C., 355, 47 S. E., 695, this Court held that sec. 2719, making it lawful for any corporation, person or firm to issue, pay out or circulate for payment for the wages of labor, any order, check, memorandum, token or evidence of indebtedness, payable in whole or in part otherwise than in lawful money of the United States, except upon conditions specified in the act, did not violate the 14th amendment, and was upon a reasonable classification, even though it contained a proviso that said section shall not apply to agricultural contracts or advances made for agricultural purposes.

In the case of *Porter* v. *Railway Co.*, 63 S. C., 169, 41 S. E., 108, this Court held that the act, 22 Stat., 443, imposing a penalty on common carriers for failure to pay or refuse to pay damages, etc., to freight within sixty days, does not violate those sections of the State and Federal Constitutions providing for equal protection to all. This Court distinguished that case from the Ellis case in two particulars,

6—73

viz: (1) that the South Carolina statute of 1897 applied to all common carriers, while the Texas statute, condemned in the Ellis case, was limited to one class of common carriers, railway corporations; (2) that the South Carolina statute was limited to such claims as were peculiarly incident to the business of a common carrier, but the Texas statute was not so limited.

The statute considered in the Porter case was, in *Johnson v. Southern Ry.,* 69 S. C., 322, held to be repealed by the act of 1903, which is now under consideration. But the principle decided in the Porter case is just as applicable in the present case. A valid distinction cannot be based upon the difference between a requirement "to pay or refuse to pay" within a given time, as provided in the act of 1897, and a requirement "to pay" within a given time, as required in the act of 1903, for if it be unlawful to require the latter, under penalty, it must also be unlawful to require the former, since no other person or class is required "to pay or refuse to pay" under penalty. The decision rests upon the reasonableness of the classification of common carriers for particular legislation with respect to the performance of their duty as such, thereby subserving an important public purpose within the police power of the State.

From this review of the decisions of the Supreme Court of the United States and of this Court, we think it is clear that the statute is not unconstitutional.

The respondent, in the event of the above conclusions being reached, has upon notice and exceptions taken, asked that this Court consider whether the judgment of the Circuit Court should not be affirmed upon the ground that the magistrate erred in finding judgment for the penalty, when the testimony showed that the claim filed by plaintiff for $1.75 was made up of two items, to wit: $1.50, the value of the property alleged to have been lost or damaged while in possession of defendant, and 25 cents, freight paid by plaintiff for same. The magistrate having found as a fact that the amount of the loss or damage

was $1.75, as claimed, and this conclusion having been affirmed by the Circuit Court by sustaining the magistrate's judgment to that extent, we have no power to review or reverse such conclusion of fact, unless there was absolutely no evidence tending to sustain it. It was shown that the cost of the bunch of bananas in Columbia, S. C., was $1.50 and the freight thereon to McBee, S. C., was 25 cents. This was certainly some evidence that the value of the bananas to plaintiffs at McBee was at least $1.75, and that such was the amount of their loss. The magistrate having adjudged. the loss to be as claimed by plaintiffs, judgment for the penalty was proper.

The judgment of the Circuit Court is reversed, and the judgment of the magistrate court is affirmed.

*The* CHIEF JUSTICE *did not participate in this opinion because of illness.*