.*CHICAGO, R. I. & P. RY. CO. v. BEATTY.

No. 1156.   Opinion Filed October 10, 1911.

(118 Pac. 367.)

On Rehearing August 20, 1912.

(126 Pac. 736.)

1.   **COMMERCE** — Interstate Commerce — Carriers — Failure to Fur-
     nish Cars.   The act of the Legislature of Oklahoma Territory of
     1905 (section 2, art. 2, c. 10, p. 144, Sess. Laws of 1905), impos-
     ing upon railroad companies a penalty of $1 per day for failure
     to furnish cars within four days after they are requested, but
     excusing a company ''in case of fire, washouts, strikes, lockouts,
     or other unavoidable casualties,'' is not an infringement of the
     commerce clause of the Constitution of the United States (article
     1, sec. 8), and not in conflict with Act Cong. June 29, 1906, c.
     3591, sec. 1, 34 St: at L. 584 (U. S. Comp. St. Supp. 1911, p. 1285).

2.   **STATUTES**—Construction.   Where a statute is susceptible of
     two constructions, one of which will uphold it, while the other
     will strike it down, it is the duty of the court to accept the for-
     mer construction.

3.   **WITNESSES**—Cross-Examination.   The cross-examination of a
     witness should be confined to the subject-matter of his direct
     examination.

4.   **COMMERCE**—Powers Remaining in State.   An act of Congress
     originating in its power to regulate interstate commerce does not
     annul an act of the state originating in its police power, unless
     there is such a conflict between the two as that the enforcement
     of the act of the state would be to frustrate the operation of
     the act of Congress, and to refuse to its provisions their natural
     effect.

(Syllabus by Ames, C.)

*Error from Caddo County Court;*
*B. F. Holding, Judge.*

Action by W. W. Beatty against the Chicago, Rock Island
& Pacific Railway Company to recover the penalty of $1 per
day per car for not supplying cars for the movement of freight
from Verden, Okla., to Chickasha, Ind. T., in November and

*Appealed to the United States Supreme Court.

December, 1906.   Judgment for plaintiff, and defendant brings error.   Affirmed.

*C. O. Blake, E. E. Blake, H. B. Low,* and *R. J. Roberts,* for plaintiff in error.

*A. J. Morris,* for defendant in error.

Opinion by AMES, C.   The question involved in this case is the constitutionality of section 2, art. 2, c. 10, of Sess. Laws 1905 (Comp. Laws 1909, p. 144, sec. 521).   That section is as follows:

"It shall be the duty of every railroad company operating a line of road wholly or in part within this state for the transportation of freight, upon the verbal or written application of any shipper to its station agent or other agent in charge of transportation of freight for a car or cars to be loaded with freight other than perishable freight or live stock, stating the character of the freight and its final destination, to furnish said car or cars within four days from seven o'clock a. m. of the day following such application.   Or, when such application specifies a future day when said car or cars are required, giving not less than four days' notice thereof computing from seven o'clock a. m. of the day following such application, it shall be the duty of said company to furnish said cars or car on the day specified in said application.   For failure to comply with this section said company shall forfeit and pay to the shipper applying for said car or cars the sum of one dollar per car per day or fraction of a day's delay after free time, together with all actual damages said applicant may sustain thereby:   Provided, that if in case of fire, washouts, strikes, lockouts, or other unavoidable casualties such railroad company shall not be able to furnish such cars within such time, then and in that event such time of demurrage shall not begin to run until such obstacles and hindrances are removed."

The argument is made that the section conflicts with the commerce clause of the Constitution of the United States, by which Congress is vested with power "to regulate commerce with foreign nations, and among the several states, and with the Indian tribes."   Article 1, sec. 8.   It is, of course, thoroughly established that this power of Congress to regulate interstate

commerce is exclusive, and as extensive as the commerce which is to be regulated. It is likewise thoroughly established that the state has full power to regulate intrastate commerce, and that neither the state nor the United States can enter upon or occupy the field exclusively committed to the other. It is likewise thoroughly settled that the states did not grant unto the United States their police power, and that, consequently, they retained it, and, having retained it, it is a function which they not only have the right to exercise, but which it is their duty to exercise. The inquiry, therefore, is whether this statute regulates interstate commerce, or whether it is a mere exercise of the state's police power; whether its design is to obstruct interstate commerce, or merely to facilitate the movement of freight, both inter and intrastate.

It seems clear to us that the purpose of the statute is the latter, and not the former. The prompt movement of the cars for interstate commerce cannot be a burden upon it, but an aid to it; and, if this statute affects interstate commerce, it is merely incidental and in aid of it. *Western Union Tel. Co. v. Cravo,* 220 U. S. 364, 31 Sup. Ct. 399, 55 L. Ed. 498, decided April 3, 1911, involved the constitutionality of a Virginia statute imposing upon telegraph companies the duty of transmitting dispatches faithfully, impartially, and promptly, and imposing a penalty of $100 for unreasonable delay. The action was brought by the plaintiff to recover the penalty for delay in transmitting a message from Richmond, Va., to Brockton, N. Y., and the telegraph company contended that the statute was a regulation of interstate commerce, and therefore void. In the opinion by Mr. Justice Lurton the court denied this contention, and said:

"The requirement of the Virginia statute, as here applied, is a valid exercise of the power of the state, in the absence of legislation by Congress. It is neither a regulation nor a hindrance to interstate commerce, but is in aid of that commerce."

In *Chicago, R. I. & P. Ry. Co. v. Arkansas,* 219 U. S. 453, 465, 31 Sup. Ct. 275, 278, 55 L. Ed. 290, decided February 20, 1911, the Supreme Court upheld the statute of Arkansas prescribing a minimum of three brakemen for freight trains of

more than 25 cars and denied the contention that such a statute was a regulation of interstate commerce. In the opinion Mr. Justice Harlan says:

"It is not too much to say that the state was under an obligation to establish such regulations as were necessary or reasonable for the safety of all engaged in business or domiciled within its limits. Beyond doubt, passengers or interstate carriers, while within Arkansas, are as fully entitled to the benefits of valid local laws enacted for the public safety as are citizens of the state. Local statutes directed to such an end have their source in the power of the state, never surrendered, of caring for the public safety of all within its jurisdiction; and the validity under the Constitution of the United States of such statutes is not to be questioned in a federal court, unless they are clearly inconsistent with some power granted to the general government, or with some right secured by that instrument, or unless they are purely arbitrary in their nature. The statute here involved is not in any proper sense a regulation of interstate commerce, nor does it deny the equal protection of the laws. Upon its face it must be taken as not directed against interstate commerce, but as having been enacted in aid, not in obstruction, of such commerce, and for the protection of those engaged in such commerce."

In *Western Union Tel. Co. v. Commercial Milling Co.*, 218 U. S. 406, 31 Sup. Ct. 59, 54 L. Ed. 1088, decided November 28, 1910, a statute of Michigan was upheld which prohibited telegraph companies from limiting their liability on account of a negligent failure to deliver a telegram, even though addressed to a person in another state, and the contention that such a statute was a regulation of interstate commerce was denied.

In *Atlantic Coast Line R. Co. v. Mazursky,* 216 U. S. 122, 30 Sup. Ct. 378, 54 L. Ed. 411, a South Carolina statute was upheld which penalized the failure of a common carrier to adjust and pay, within a specified time, claims for loss or damage, and the contention that such a statute was a regulation of interstate commerce was denied. Mr. Chief Justice Fuller, in delivering the opinion of the court, quotes with apparent approval, on page 132 of 216 U. S. and page 381 of 30 Sup. Ct. (54 L. Ed. 411), the following language from *Seegers Bros. v. Seaboard Air Line R. Co.,* 73 S. C. 71, 73, 52 S. E. 797, 121 Am. St. Rep. 921:

"The duty to make prompt settlement for loss or damage to goods is but an incident of the duty to transport and deliver safely and with reasonable diligence.  The statute in question was designed to effectuate an important public purpose, viz., to compel the common carrier to perform with reasonable diligence the duty which peculiarly appertains to his business as a carrier of freight.  The penalty is but a means to that end."

And see same case, 207 U. S. 73, 28 Sup. Ct. 28, 52 L. Ed. 108.

In *Western Union Tel. Co. v. James,* 162 U. S. 650, 16 Sup. Ct. 934, 40 L. Ed. 1105, a statute of Georgia imposing a penalty for the failure to diligently deliver to the person addressed in Georgia an interstate message was upheld as a valid exercise of the state's power and not a regulation of interstate commerce, and in the opinion Mr. Justice Peckham says:

"While it is vitally important that commerce between the states should be unembarrassed by vexatious state regulations regarding it, yet on the other hand, there are many occasions where the police power of the state can be properly exercised to insure a faithful and prompt performance of duty within the limits of the state upon the part of those who are engaged in interstate commerce."

In *Patterson v. Missouri Pacific R. Co.,* 77 Kan. 236, 94 Pac. 138, 15 L. R. A. (N. S.) 733, a statute very similar to ours was considered and upheld.  The Kansas statute imposed a penalty of $1 per day for failure to furnish the cars, but provided "that the provisions of this law shall not apply in cases of strikes, unavoidable accidents, and other public calamities," while the exception of our statute is that the penalty does not apply "in case of fire, washouts, strikes, lockouts, or other unavoidable casualties."

In *Hardwick Farmers' Elevator Co. v. Chicago, R. I. & P. Ry. Co.,* 110 Minn. 25, 124 N. W. 819, a similar demurrage act was sustained, which imposed a penalty of $1 per day for delay, and the exception of the statute was in the case of "strikes, public calamities, accidents, or any cause not within the power of the railroad company to prevent, or during which the loading or unloading of freight by shipper or consignee is delayed by reason of inclement weather which would make loading or unload-

ing impracticable, or any cause not in the power of said shipper or consignee to prevent."

In *Stone & Co. v. Atlantic Coast Line Ry. Co.*, 144 N. C. 220, 56 S. E. 932, the validity of the North Carolina demurrage law was involved. By this law a penalty was imposed for unreasonable delay, and it was provided that a greater delay than two days at the initial point, and 48 hours at one intermediate point for each 100 miles, was *prima facie* unreasonable. This act was held valid.

In *Southern Ry. Co. v. Melton*, 133 Ga. 277, 65 S. E. 665, a rule of the Railroad Commission of Georgia requiring railroads to furnish cars within four days after demand, under penalty of $1 a day, was upheld.

In *Houston & T. C. R. Co. v. Mayes*, 201 U. S. 321, 26 Sup. Ct. 491, 50 L. Ed. 772, a demurrage act of Texas was held to be an unconstitutional regulation of interstate commerce which imposed a penalty of $25 a day for each car not furnished, and which only excused the railroad for failure to furnish because of "strikes or other public calamity." The opinion was delivered by five of the justices; one not participating and three dissenting. The power of the state to compel the railroads to furnish adequate facilities for the movement of commerce, whether state or interstate, was conceded; but it was held that the imposition of the duty to furnish cars at a specified time, regardless of every consideration except "strikes or other public calamity," under a penalty of $25 per day per car for failure to do so, was an unreasonable and arbitrary requirement. In delivering the opinion Mr. Justice Brown says:

"Although it may be admitted that the statute is not far from the line of proper police regulation, we think that sufficient allowance is not made for the practical difficulties in the. administration of the law, and that, as applied to interstate commerce, it transcends the legitimate powers of the Legislature."

Under the authority of the Mayes case, therefore, as well as all the other decisions on the subject, the subject-matter of this statute is rightfully within the power of the Legislature, and in order for the courts to strike it down we must be able to say that it is so arbitrary and unreasonable as to transcend the limits

of the state's power. We cannot reach this conclusion. Whether cars should be furnished within one day, or four, or six may be a matter upon which different men would have different opinions; but it is certainly a subject as fully within the knowledge of the Legislature as it is that of the courts, and we cannot say that a requirement that they should be furnished within four days is arbitrary and unreasonable. It certainly is not a burden on interstate commerce. But the Legislature has not made this an absolute requirement, but excuses the railroad in the event of the contingencies named in the statute. We are asked to so construe these contingencies and exceptions as to make the act unconstitutional. But where two constructions are available, one of which will uphold the act, while the other will strike it down, it is the duty of the courts to take the former course. *Patterson v. Missouri Pacific R. Co.,* 77 Kan. 236, 94 Pac. 138, 15 L. R. A. (N. S.) 733; *Hardwick Farmers' Elevator Co. v. Chicago, R. I. & P. Ry. Co.,* 110 Minn. 25, 124 N. W. 819; *Udall Milling Co. v. Atchison, T. & S. F. Ry. Co.,* 82 Kan. 256, 263, 108 Pac. 137, 139.

In the case at bar the defendant merely filed a general denial. It did not plead or undertake to prove any facts which would make the application of the statute unreasonable, but merely stood upon the naked proposition that the statute, on its face, is so unreasonable and arbitrary as to be void. The meaning of the words "unavoidable casualty" can better be ascertained by applying them to concrete cases, and, as there are no facts before us, we cannot apply the words in this case; but it is manifest that the exceptions of our statute are so much broader than the exceptions of the Texas statute involved in the Mayes case that that case is not controlling, and it is sufficient to say that, when a railroad company cannot furnish cars on account of any casualties beyond its control, the statute will not apply.

All the other assignments of error are disposed of by what we have already said, except the fifth, which attacks the rulings of the court on the admission of evidence. On the cross-examination of the plaintiff, the defendant inquired whether cars were scarce that fall, whether plaintiff had any trouble in getting cars,

and whether he got as many as other dealers. This was objected to as improper cross-examination, and the objection was sustained. We do not think this was error. If the defendant relied upon such a defense, it should have been pleaded and proven; and this could not be done by the examination of the plaintiff, when his examination in chief did not legitimately present the matter.

For the reasons herein stated, the judgment of the trial court should be affirmed.

By the Court: It is so ordered.

---

## ON REHEARING.

AMES, C. In our former opinion we held that the demurrage act under consideration was not a violation of the commerce clause of the Constitution of the United States. A petition for rehearing was filed, for the first time calling our attention to section 1 of the act of June 29, 1906 (chapter 3591, 34 St. at L. 584 [U. S. Comp. St. Supp. 1911, p. 1285]), and the petition for rehearing was granted in order that the case might be considered with that act of Congress in mind. At the oral argument it was suggested that the exact proposition was pending before the ʻSupreme Court of the United States, and we have delayed further opinion in the matter awaiting the decision of that tribunal, as it would, of course, be controlling upon us. The exact question, however, has not been decided by that court at this term. Section 1 of the Act of June 29, 1906, is as follows:

"The term 'common carrier,' as used in this act, shall exclude express companies and sleeping car companies. The term 'railroad,' as used in this act, shall include all bridges and ferries used or operated in connection with any railroad, and also all the road in use by any corporation operating a railroad, whether owned or operated under a contract, agreement, or lease, and shall also include all switches, spurs, tracks, and terminal facilities of every kind used or necessary in the transportation of the persons or property designated herein, and also all freight

depots, yards, and grounds used or necessary in the transportation or delivery of any kind of said property; and the *term 'transportation' shall include cars* and other vehicles and all instrumentalities and facilities of shipment or carriage, irrespective of ownership or of any contract, express or implied, for the use thereof, and all services in connection with the receipt, delivery, elevation, and transfer in transit, ventilation, refrigeration or icing, storage, and handling of property transported; and *it shall be the duty of every carrier subject to the provisions of this act to provide and furnish such transportation upon reasonable request therefor,* and to establish through routes and just and reasonable rates applicable thereto." (Italics ours).

It will be observed that this section provides that "the term 'transportation' shall include cars and other vehicles and all instrumentalities and facilities of shipment or carriage," and, further, that "it shall be the duty of every carrier subject to the provisions of this act to provide and furnish such transportation upon reasonable request therefor." The effect of the act of Congress, then, is to require the carrier to furnish cars for interstate commerce upon reasonable request, while the effect of the act of the Legislature is to require such cars to be furnished within five days, under the penalty of $1 per day per car for failure to do so.

Is there such a conflict between the two statutes that the state legislation must yield to the national legislation, or does the state legislation, in the exercise of the state's police power, merely incidentally touch the same subject as the national legislation in such a way as to aid, rather than hinder, its full operation? The act of Congress manifestly originates in the power to regulate commerce between the states. On the other hand, the act of the state originates in its police power. *Houston & T. C. R. Co. v. Mayes,* 201 U. S. 321, 328, 26 Sup. Ct. 491, 50 L. Ed. 772, 775. We, therefore, have an act of Congress designed to regulate interstate commerce, and an act of the Legislature passed under its police power, both of which, as it happens, act upon the same subject-matter. This being true, the question arises whether there is such a conflict as compels the courts to say that the act of the United States strikes down the act of the state. Certain principles are elementary and fundamental. One is that the Con-

stitution of the United States and laws passed in pursuance thereof are the supreme law of the land. Another is that the states did not grant unto the United States their police power, and consequently they retained it. Another is that the United States, within its sphere, is sovereign, but that the states within their sphere are equally sovereign. From these considerations it would seem to follow that, where an act of Congress, enacted pursuant to its lawful power, touches the same subject as an act of the state, enacted pursuant to its lawful power, the question should be whether at the point of contact these two acts run parallel with each other or whether they cross. If they cross each other, the supreme law, of course, must prevail. If they run parallel with each other, both may prevail, and, in the absence of necessary conflict, the courts will recognize the will of both bodies of lawmakers.

The act of Congress says that the cars shall be furnished upon reasonable request. This merely declares what was the law without the act. Such service was the common-law duty of the carrier. The act of the Legislature requires cars to be furnished within five days. In our previous opinion we have held that this requirement is not so unreasonable and arbitrary as to be stricken down as matter of law. It follows, therefore, that it is reasonable. The act of Congress, therefore, and the act of the state run parallel with each other, and the state enforces a penalty of $1 per day for failure to discharge the duty which is enjoined both by the state and by the nation. There being no necessary conflict, we therefore conclude that section 1 of the act of 1906 does not operate to destroy the demurrage act of Oklahoma which was previously in existence. The principles upon which we rest this conclusion find support in many cases decided by the Supreme Court of the United States, two of which were decided at the last term, one the *Southern Railway Co. v. Reid*, 222 U. S. 424, 32 Sup. Ct. 140, 56 L. Ed. 257, striking down a statute of North Carolina relative to the receipt of freight for transportation, and the other *Savage v. Jones*, 225 U. S. 501, 32 Sup. Ct. 715, 56 L. Ed. 1182, upholding a statute of Indiana regulating the sales of concentrated com-

mercial feeding stuffs distributed by means of interstate commerce.

In the Reid case the validity of a North Carolina act was involved which required carriers to receive freight for transportation, and forward the same by a route selected by the shipper, under penalty of $50 per day for each day of refusal. It was held that this act was in conflict with the act regulating commerce, and was, therefore, invalidated by it. In that case, however, demand was made upon the carrier for a bill of lading reading from Charlotte, N. C., to Davis, W. Va., and an offer was made to prepay the freight charges. The carrier declined to name a rate or permit the shipper to prepay the freight, and declined to issue a bill of lading as requested, because no through rate or route had been filed or published as required by the interstate commerce act. In determining whether both acts could stand, Mr. Justice McKenna, in delivering the opinion of the court, says (222 U. S. 437, 32 Sup. Ct. 142, 56 L. Ed. 257):

"The principle of that case, therefore, requires us to find specific action either by Congress in the interstate commerce act, or by the Commission, covering the matters which the statute of North Carolina attempts to regulate."

After then reviewing the general scope of the commerce act and of the North Carolina act, it is said (222 U. S. 442, 32 Sup. Ct. 144, 56 L. Ed. 257):

" * * * The statute of North Carolina conflicts with these requirements. What they forbid the carrier to do the statute requires him to do, and punishes disobedience by successive daily penalties."

And again on the same page:

"If the carrier obey the state law, he incurs the penalties of the federal law; if he obey the federal law, he incurs the penalties of the state law. * * *"

Having found this direct conflict between the two laws, it necessarily followed that the state law would have to yield, and the court so held.

*Savage v. Jones,* 225 U. S. 501, 32 Sup. Ct. 715, 56 L. Ed. 1182, involved certain Indiana legislation prohibiting the sales by importing purchases of concentrated feed stuffs in the original

packages without a compliance with the requirements of the statute as to inspection, analysis, the disclosure of the ingredients, and the filing of a certificate of registration and for labels and stamps. It was contended that the act was invalid, because Congress, by the passage of the Food and Drugs Act of June 30, 1906 (chapter 3915, 34 St. at L. 768 [U. S. Comp. St. Supp. 1911, p. 1354]), to prevent the adulteration and misbranding of foods and drugs, had covered the same field, and therefore excluded the act of the state. It was held by the court that there was no necessary conflict between the two acts, and that, therefore, the state act might still stand. In delivering the opinion Mr. Justice Hughes states certain well-established principles, supported by the elaborate citation of authorities, which we think uphold the act under review in this case. He says (225 U. S. 501, 32 Sup. Ct. 722, 56 L. Ed. 1182):

"The state cannot, under cover of exerting its police powers, undertake what amounts essentially to a regulation of interstate commerce, 'or impose a direct burden upon that commerce."

In support of this statement he cites the following cases: *Hannibal & St. J. R. Co. v. Husen,* 95 U. S. 465, 24 L. Ed. 527; *Walling v. Michigan,* 116 U. S. 446, 6 Sup. Ct. 454, 29 L. Ed. 691; *Bowman v. Chicago & N. W. R. Co.,* 125 U. S. 465, 8 Sup. Ct. 689, 1062, 31 L. Ed. 700; *Leisy v. Hardin,* 135 U. S. 100, 10 Sup. Ct. 681, 34 L. Ed. 128; *Minnesota v. Barber,* 136 U. S. 313, 10 Sup. Ct. 862, 34 L. Ed. 455; *Brimmer v. Rebman,* 138 U. S. 78, 11 Sup. Ct. 213, 34 L. Ed. 862; *Scott v. Donald,* 165 U. S. 58, 17 Sup. Ct. 265, 41 L. Ed. 632; *Schollenberger v. Pennsylvania,* 171 U. S. 1, 18 Sup. Ct. 757, 43 L. Ed. 49; *Houston & T. C. R. Co. v. Mayes,* 201 U. S. 321, 26 Sup. Ct. 491, 50 L. Ed. 772; *Atlantic Coast Line R. Co. v. Wharton,* 207 U. S. 328, 28 Sup. Ct. 121, 52 L. Ed. 230; *Adams Exp. Co. v. Kentucky,* 214 U. S. 218, 29 Sup. Ct. 633, 53 L. Ed. 972. He next says:

"But when the local police regulation has real relation to the suitable protection of the people of the state, and is reasonable in its requirements, it is not invalid because it may incidentally affect interstate commerce, provided it does not conflict with

legislation enacted by Congress pursuant to its constitutional authority."

Supporting this proposition, he cites the following cases: *Plumley v. Massachusetts,* 155 U. S. 461, 15 Sup. Ct. 154, 39 L. Ed. 223; *Hennington v. Georgia,* 163 U. S. 299, 16 Sup. Ct. 1086, 41 L. Ed. 166; *New York, N. H. & H. R. Co. v. New York,* 165 U. S. 628, 17 Sup.. Ct. 418, 41 L. Ed. 853; *Chicago, M. & St. P. R. Co. v. Solan,* 169 U. S. 133, 18 Sup. Ct. 289, 42 L. Ed. 688; *Missouri, K. & T. R. Co. v. Haber,* 169 U. S. 613, 18 Sup. Ct. 488, 42 L. Ed. 878; *Patapsco Guano Co. v. Board of Agriculture,* 171 U. S. 345, 18 Sup. Ct. 862, 43 L. Ed. 191; *Reid v. Colorado,* 187 U. S. 137, 23 Sup. Ct. 92, 47 L. Ed. 108; *Pennsylvania R. Co. v. Hughes.* 191 U. S. 477, 24 Sup. Ct. 132, 48 L. Ed. 268; *Crossman v. Lurman,* 192 U. S. 189, 24 Sup. Ct. 234, 48 L. Ed. 401; *New Mexico ex rel. McLean v. Denver & R. G. R. Co.,* 203 U. S. 38, 27 Sup. Ct. 1, 51 L. Ed. 78; *Asbell v. Kansas,* 209 U. S.. 251, 28 Sup. Ct. 485, 52 L. Ed. 778, 14 Ann. Cas. 1101; *Chicago, R. I. & P. Ry. Co. v. Arkansas,* 219 U. S. 453, 31 Sup. Ct. 275, 55 L. Ed. 290. He then points out (225 U. S. 501, 32 Sup: Ct. 725, 56 L. Ed. 1182) that, in the enumeration of the acts which constitute a violation of the statute, Congress has required packages to disclose the ingredients when containing morphine, opium, cocaine, and other similar substances, but has not required this to be done in all cases. The Indiana act goes a step further, and requires other ingredients to be disclosed. He then says:

"* * * Can it be said that Congress, nevertheless, has denied to the state, with respect to the feeding stuffs coming from another state and sold in the original packages, the power the state otherwise would have to prevent imposition upon the public by making a reasonable and nondiscriminatory provision for the disclosure of ingredients, and for inspection and analysis? If there be such denial it is not to be found in any express declaration to that effect."

It might have been argued in that case, and doubtless was, that Congress, by expressing its will on the subject, had taken it out of the jurisdiction of the state, but the court evidently did not entertain that opinion. The court, however, at page 501 of 225 U. S., at page 726 of 32 Sup. Ct., 56 L. Ed. 1182, says:

"Is, then, a denial to the state of the exercise of its power for the purposes in question necessarily implied in the federal statute? For, when the question is whether a federal act overrides a state law, the entire scheme of the statute must, of course, be considered, and that which needs must be implied is of no less force than that which is expressed. If the purpose of the act cannot otherwise be accomplished—if its operation within its chosen field else must be frustated and its provisions be refused their natural effect—the state law must yield to the regulation of Congress within the sphere of its delegated power."

And again, in the next paragraph, it is said:

" * * * In other words, such intent is not to be implied unless the act of Congress, fairly interpreted, is in actual conflict with the law of the state."

Many cases are cited supporting this doctrine. At page 501 of 225 U. S., at page 727 of 32 Sup. Ct., 56 L. Ed. 1182, Mr. Justice Hughes quotes with approval from *Reid v. Colorado,* 187 U. S. 137, 23 Sup. Ct. 92, 47 L. Ed. 108, as follows:

"It should never be held that Congress intends to supersede or by its legislation suspend the exercise of the police powers of the states, even when it may do so, unless its purpose to effect that result is clearly manifested. This court has said—and the principle has been often reaffirmed—that, "in the application of this principle of supremacy of an act of Congress in a case where the state law is but the exercise of a reserved power, the repugnance or conflict should be direct and positive, so that the two acts could not be reconciled or consistently stand together.' "

The principles involved in the cases of *Southern Railway Co. v. Reid, supra,* and *Savage v. Jones, supra,* are identical, and the two cases, approaching statutes from different points of view, disclose very clearly the principles which should apply.

Will the act of Congress "be frustrated and its provisions be refused their natural effect" by enforcing the act of Oklahoma? Can it be said that "the act of Congress, fairly interpreted, is in actual conflict with the law of the state"? Is there such a "repugnance or conflict" "that the two acts could not be reconciled or consistently stand together"? We think these questions must all be answered in the negative.

The statute of Oklahoma, passed in the exercise of its police power, does not conflict with the act of Congress, passed in the

JULY TERM, 1912.—VOL. XXXIV. 335

exercise of its right to regulate interstate commerce. This Oklahoma statute, in so far as it affects commerce, facilitates intrastate commerce, and it seems to us that interstate commerce is entitled to the benefit of this statute as much as intrastate commerce. Many other decisions might be reviewed, but *Southern Railway Co. v. Reid, supra,* and *Savage v. Jones, supra,* cite these other decisions and lay down the principles necessary to a decision of this case.

We adhere to the original conclusion, and think the judgment of the trial court should be affirmed.

By the Court: It is so ordered.