**CHICAGO, R. I. & P. RY. CO. et al. v. STATE et al.**

No. 9354—Opinion Filed April 8, 1919.

(180 Pac. 246.)

(Syllabus.)

**Commerce—Regulation by State Corporation Commission—Grain Elevators.**

By reason of the provisions of the Congressional Act regulating interstate commerce (U. S. Comp. St. § 8563), the Corporation Commission is without jurisdiction to require a railway company to designate a point on its right of way for the location of a portable grain elevator and to spot cars thereto for interstate shipments, when the effect of such order is to obstruct interstate commerce by materially interfering with the movement of cars to and from elevators permanently located near the right of way, and with the loading of cars on the right of way by track shippers.

Appeal from Corporation Commission.

Complaint by the State of Oklahoma and the Lawton Grain Company, by W. C. Hartman, agent, against the Chicago, Rock Island & Pacific Railway Company, and Jacob

M. Dickinson, receiver. From an order of complaint, the Railway Company and its receiver appeal. Order set aside, and cause remanded.

C. O. Blake, R. J. Roberts, W. H. Moore, and John E. DuMars, for appellants.

S. P. Freeling, Atty. Gen., and John B. Harrison, Asst. Atty. Gen. (Paul Walker, of counsel), for Corporation Commission.

OWEN, J. The grain company filed its complaint with the Corporation Commission, alleging the defendant railway company refused to allow it to locate a portable grain elevator on the right of way of the railway company at Carnegie, and refused to designate a location for such elevator, and to spot cars thereto for shipment of grain. From an order sustaining the complaint the railway company appeals.

The trackage facilities of the railway company at Carnegie consist of a main track, passing track, and house or team track. It is the custom of the railway company to place cars on this house or team track so as to enable freight to be loaded into or from cars, and to permit grain to be loaded from wagons into the cars by what is designated as track shippers. There are three grain elevators at this place, with a storage capacity of approximately 35,000 bushels, located near the right of way and connected with the team track by extension tracks. These elevators were located and the extension tracks built under provisions of section 33, art. 9, of the Constitution.

From the evidence it appears there was no refusal to allow the use of the portable elevator on the right of way. On the contrary, appellant was willing to accord to the grain company the same treatment and privileges as to other track shippers, that is, to place cars on the team track and permit the grain to be loaded with the portable elevator, but refused to designate any particular location for the portable elevator, and refused to agree to spot cars to any particular location.

The portable elevator has no storage tank, but is used for the purpose of loading grain from wagons into the cars by arranging the wagons so as to permit the grain to flow into a hopper and be carried from the hopper into the cars standing on the railroad track. While this elevator is susceptible of being moved from place to place, the reason given for requiring the cars to be spotted to a particular point is to enable the grain company to prop the engine of the elevator on sills and to avoid moving it from place to place. It requires something like a half day to move, and it is impractical to operate unless propped up and, in effect, stationary.

It is contended by the railway company that to locate the portable elevator at a particular point on the right of way, and spot the cars to such point, would practically constitute a fixed location, and would interfere with the movement of cars to and from the elevators permanently located near the right of way, and with the movement of cars loaded from wagons by other car shippers, which would constitute a serious obstruction of interstate commerce.

It is contended on the part of the grain company that the elevator being little more than an improved scooping device for loading grain from wagons into the railway cars, and because it can be moved from point to point along the right of way, it is not to be considered as an elevator in the sense contemplated by section 33, art. 9, of the Constitution, or section 1 of the act regulating commerce (Act June 18, 1910, c. 309, 36 Stat. 539 [U. S. Comp. St. § 8563]).

It is conceded the grain was to be shipped to points beyond the state, and the facilities demanded were for interstate commerce, but it is contended the order would be in aid of interstate commerce. In support of this contention the case of C., R. I. & P. Ry. Co. v. Beatty, 34 Okla. 321, 118 Pac. 367, 126 Pac 736. 42 L. R. A. (N. S.) 984, is relied upon. The question presented in that case was the power of the Corporation Commission to require the railway company to furnish cars to the shipper, and it was there held the order was not designed to obstruct interstate commerce, but merely to facilitate the movement of freight, both inter and intra state, and was within the proper exercise of the state's police power. But that case was reversed by the Supreme Court of the United States, 234 U. S. 753, 34 Sup. Ct. 777, 58 L. Ed. 1577, on the authority of C., R. I. & P. Ry Co. v. Hardwick Ele. Co., 226 U. S. 434, 33 Sup. Ct. 175, 57 L. Ed. 285, 46 L. R. A. (N. S.) 203, where it was said:

"As legislation concerning the delivery of cars for the carriage of interstate traffic was clearly a matter of interstate commerce regulation, even if such subject was embraced within that class of powers concerning which the state had a right to exert its authority in the absence of legislation by Congress, it must follow, in consequence of the action of Congress to which we have referred, that the power of the state over the subject-matter ceased to exist from the moment

that Congress exerted its paramount and all-embracing authority over the subject. We say this because the elementary and long-settled doctrine is that there can be no divided authority over interstate commerce, and that the regulations of Congress on that subject are supreme."

The order requires the railway company to designate a point on its right of way for the location of the elevator and to spot cars to that point. The testimony on the part of the grain company is to the effect that it expected to use the elevator during the shipping season, and wished to have the location designated so it might prop the engine on secure sills and avoid the necessity of moving it from time to time. This would be, in effect and for all intents and purposes, a permanent location of the elevator on the right of way, and the order requiring the railway company to place cars at that point so as to accommodate the convenience of the elevator would be, in effect, to control the movement of cars for interstate shipments, and owing to the track arrangements and limited facilities at that point, would amount to a serious obstruction of interstate commerce.

That portion of the order requiring the railway company to designate a certain point for location of the elevator, and requiring cars to be spotted to that point, was in excess of the jurisdiction of the Corporation Commission.

Therefore the order is set aside and the cause remanded.

HARDY, C. J., and SHARP, PITCHFORD, and McNEILL, JJ., concur.